William A. McCALL, Petitioner,

v.

U.S. POSTAL SERVICE, Respondent.

No. 87-3422.

United States Court of Appeals, Federal Circuit.

Feb. 4, 1988.

Jerry H. Langer, San Francisco, Cal., submitted for petitioner.

Eric L. Miller, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., submitted for respondent. With him on the brief were Richard K. Willard, Acting Asst. Atty. Gen., David M. Cohen, Director and Robert A. Reutershan, Asst. Director. Also on the brief were Stephen E. Alpern, Associate Gen. Counsel and Alice L. Covington, Office of Labor Law, U.S. Postal Service, Washington, D.C., of counsel.

Before RICH, Circuit Judge,
COWEN, Senior Circuit Judge, and
BISSELL, Circuit Judge.

RICH, Circuit Judge.

This petition is for review of a decision of the Merit Systems Protection Board (MSPB or board) dismissing William McCall's appeal of his removal for lack of jurisdiction because Mr. McCall had waived his right to appeal disciplinary actions to the MSPB in settlement of a prior removal action. We affirm.

### I.

McCall was employed as a mail handler with the United States Postal Service which removed him March 31, 1986, for various instances of misconduct. McCall appealed his removal to the MSPB.

During the pendency of the appeal, McCall and the Postal Service settled the removal action. Pursuant to a written "last chance" settlement agreement, dated April 30, 1986, McCall withdrew his appeal to the MSPB and was reinstated in his position. Additionally, he agreed to seven terms, four of which were as follows:

3. The employee must maintain satisfactory punctuality, attendance and good work habits that are acceptable to management during a 1 year probationary period. (May 4, 1986 through May 4, 1987)

4. The employee must submit acceptable medical certification indicating he was treated during the absence and was ill and unable to work during the period of absence relative to illness for a period of not less than 1 year.

5. The employee must submit acceptable evidence to substantiate each and every absence relative to emergencies and tardiness. Such evidence must be submitted when the employee reports for duty and the requirement shall be in effect for a period of not less than 1 year.

6. *Appeal rights* to the Merit Systems Protection Board, Grievance–Arbitration and Equal Employment Opportunity complaint procedures *are waived during this 1 year probationary period on any disciplinary action* against Mr. McCall. [Emphasis ours.]

The agreement concludes by stating that, "the removal will be reissued with no rights of appeal to any forum if the employee fails to meet the terms set forth in this agreement." The day after signing the agreement McCall signed a further statement witnessed by his union representative, Mr. Alvin Gant, which said:

I clearly understand the last chance opportunity agreement as stated above and fully agree with the terms of the settlement. I know and understand that I have appeal rights to the Merit Systems Protection Board with respect to appealing a removal action against me. By this agreement ... I ... of my own free will waive my rights to the Merit Systems Protection Board, Grievance–Arbitration and the Equal Employment Opportunity Procedure for the period of my 1 year probation.

Both McCall and his union representative signed the agreement and McCall was reinstated on May 4, 1986.

On August 8, 1986, the Postal Service issued a notice of removal to McCall, effective September 8, 1986, based on irregular attendance and failure to comply with the settlement agreement. The notice detailed that McCall failed to report for duty as scheduled on 22 specific days, missing 175 hours of work, between June 8 and August 5, 1986. The notice stated that because of

these absences, Mr. McCall failed to adhere to the provision of the settlement agreement which required him to maintain satisfactory attendance and good work habits acceptable to management during the one-year probationary period.

On September 26, 1986, McCall filed an appeal with the MSPB challenging his removal. On October 6, 1986, the Postal Service moved to dismiss the appeal for lack of appellate jurisdiction based on the waiver contained in the settlement agreement. In an Order dated October 29, 1986, the administrative judge (AJ) noted that McCall had failed to respond to a previous order to submit evidence or argument in support of jurisdiction. The AJ again ordered that McCall submit evidence or argument to establish the MSPB's jurisdiction to hear his appeal. McCall submitted argument in response to the Order on November 10, 1986, and requested that the board schedule a hearing on the jurisdictional issue.

The AJ dismissed McCall's appeal for lack of jurisdiction on November 28, 1986. No hearing was held on the jurisdictional question. The AJ also found that McCall's waiver of his appeal rights was valid and enforceable, reasoning that the waiver language in McCall's settlement agreement was virtually identical to that found in the settlement agreement in *Ferby v. United States Postal Service*, 26 M.S.P.R. 451 (1985), which the MSPB found to be a valid waiver. Additionally, the AJ found that McCall breached the provision of the settlement agreement which required that he maintain satisfactory attendance.

The full board denied review of the AJ's decision on April 21, 1987, 33 M.S.P.R. 479, and the initial decision became final on that date. This petition followed.

## II.

The principal question in this case is whether the MSPB properly may enforce an employee's waiver of his right to appeal a disciplinary action pursuant to 5 U.S.C. § 7701(a).

In the settlement agreement to which McCall was a party, he expressly waived his right to appeal any disciplinary action during a one-year probationary period. The right to appeal such actions is, of course, conferred by a federal statute, § 7701(a). McCall asserts that the policies underlying that section and the Civil Service Reform Act of 1978 render such waivers unenforceable.

The Supreme Court recently decided a similar question in *Town of Newton v. Rumery*, —— U.S. ——, ——, 107 S.Ct. 1187, 1190, 94 L.Ed.2d 405, 413 (1987). The issue in *Rumery* was whether a court properly may enforce an agreement in which a criminal defendant releases his right to file a 42 U.S.C. § 1983 action in return for a prosecutor's dismissal of pending criminal charges. The Court began its analysis with a discussion of the source of applicable law which is equally apt here:

> We begin by noting the source of law that governs this case. The agreement purported to waive a right to sue conferred by a federal statute. The question whether the policies underlying that statute may in some circumstances render that waiver unenforceable is a question of federal law. We resolve this question by reference to traditional common-law principles.... The relevant principle is well-established: a promise is unenforceable if the interest in its enforcement is outweighed in the circumstances by a public policy harmed by enforcement of the agreement.

*Rumery*, 107 S.Ct. at 1192 (footnote and citation omitted); *see also E.E.O.C. v. Cosmair, Inc., L'Oreal Hair Care Division*, 821 F.2d 1085, 1090 (5th Cir.1987).[*]

---

[*] In *Cosmair*, the Fifth Circuit held that waivers of the right to file charges with the Equal Employment Opportunity Commission (EEOC) are void as against public policy. *See* 821 F.2d at 1090. While we note that the settlement agreement in this case purports to waive Mr. McCall's right to file charges with the EEOC, the validity of that waiver is not before us. Moreover, even if McCall's attempted waiver of his right to file EEOC charges is void, that would not affect the validity of the other portions of the agreement. *See* Restatement (Second) of Contracts § 184(1) (1981).

■ McCall's first objection to appeal waiver agreements is that they deny employees full and fair consideration of their cases, contrary to the goals of the Civil Service Reform Act. *See* S.Rep. No. 969, 95 Cong., 2d Sess. 51–52, *reprinted in* 1978 U.S.Code Cong. & Admin.News 2723, 2773–74. He argues that the provision of the settlement agreement which required that he maintain satisfactory attendance "acceptable to management" opens the door to completely subjective evaluation by the agency. There is nothing, McCall tells us, to prevent management from acting in bad faith, abusing its discretion, engaging in prohibited personnel practices or discrimination, or in any other way violating employees' substantive rights. We agree that the term "acceptable to management" does introduce an element of subjectivity into the agreement, but this does not mean that agencies would have a free hand to take arbitrary action against employees. We think it is implicit in the agreement here that the agency must abide by it in good faith. Thus, the agreement itself serves as a check on arbitrary agency action. If an agency acts in bad faith or takes other arbitrary and capricious action, as a breaching party it would not be able to enforce the agreement. Here, McCall has not alleged that the agency acted in bad faith, nor could he on this record. Accordingly, we think McCall's contention in this regard is exaggerated and does not justify a rule that settlement waiver agreements are *per se* invalid.

McCall next asserts that waiver agreements are inherently coercive because, due to unequal bargaining power as between employer and employee, the employee will often agree to whatever the agency proposes in order to retain his civil service career. It is true that some waiver agreements may not arise out of an entirely voluntary decision. However, as the Supreme Court answered an analogous argument in *Rumery,* the mere possibility of intimidation cannot justify invalidating *all* such agreements. Parties are often forced to make difficult choices which effectively waive statutory or even constitutional rights. *Rumery,* 107 S.Ct. at 1192. We believe that the possibility of coercion is less serious here than in the situation the Supreme Court approved in *Rumery,* where Rumery was faced with criminal prosecution.

The waiver agreement in this case, like that in *Rumery,* reflects a rational judgment on the part of McCall. That McCall obtained a substantial benefit from the agreement is plain: he retained his employment and was given an opportunity to demonstrate satisfactory attendance and performance. What he gave up was the right to pursue the appeal of his original removal to the MSPB, a course in which he had a substantial risk of forfeiting any right to employment. Because his choice was knowing and voluntary, the public interest against involuntary waivers of rights does not weigh against the enforcement of this agreement and it is not void as a matter of public policy.

McCall also argues that agencies, in the hope of negotiating "last chance" settlement agreements, will be tempted to bring disciplinary actions that might otherwise not be sustainable before the board. McCall asserts that, practically speaking, employees will choose a settlement and waiver instead of an appeal to the board, making a mockery out of all notions of fairness in the statutorily created review process. We have already seen that the public has an interest in seeing that civil servants receive full and fair consideration of disciplinary actions. *See* S.Rep. No. 969, supra, at 51–52. McCall, however, was under no compulsion to appeal his initial removal for the benefit of the public. The statute, 5 U.S.C. § 7701(a), makes that his own private decision. We cannot say that the comparatively remote public interest in the effectiveness of the Civil Service Reform Act should displace McCall's knowing and voluntary decision that he would benefit personally from the agreement. *Cf. Rumery,* 107 S.Ct. at 1193.

We also think that McCall is wrong to assume that agencies would be tempted to fabricate misconduct charges to extract "last chance" settlement agreements from employees. Government officials are presumed to carry out their duties in good

faith. *Spezzaferro v. FAA,* 807 F.2d 169, 173 (Fed.Cir.1986). Indeed, McCall points out that three quarters of adverse actions appealed to the board are sustained in the first instance without any modification. This hardly suggests that agencies are in the habit of leveling baseless misconduct charges against employees.

It is significant that the board has upheld waivers of the type at issue in the past. *Ferby v. United States Postal Service,* 26 M.S.P.R. 451 (1985), was the first case in which the full board addressed the question of whether the statutory right to appeal may be waived. The employees in *Ferby* had executed "last chance" settlement agreements virtually identical to McCall's, and the board enforced the agreements. The board held that the right to appeal was susceptible to waiver if the action was the informed, intentional abandonment of a known right, free of any coercion or duress. 26 MSPR at 455. Moreover, the board required that the terms of the waiver appear comprehensive, freely made, and fair. 26 MSPR at 456. Thus, the board in *Ferby* rejected the *per se* rule of invalidity which McCall proposes, and at the same time retained significant safeguards for employees. *Roberson v. Veterans Administration,* 32 M.S.P.R. 173 (1987), also recognizes that the right to appeal may be waived. Because these cases reflect the board's interpretation of the Civil Service Reform Act, they are entitled to weight. *Johnson v. Merit Systems Protection Board,* 812 F.2d 705, 708 (Fed.Cir.1987).

The cases McCall relies on are readily distinguished. In *Atchison, Topeka and Santa Fe Railway Co. v. Buell,* —— U.S. ——, 107 S.Ct. 1410, 94 L.Ed.2d 563 (1987), the Supreme Court considered whether the availability of a labor grievance procedure under the Railway Labor Act (RLA), 44 Stat. 577, as amended, 45 USC 151 *et seq.,* deprived an employee of his right to bring an action under the Federal Employers' Liability Act (FELA), 45 USC 51 *et seq.* The Court held that the availability of arbitration under the RLA did not bar an employee from bringing an FELA action. The rationale for the Court's decision was that although strong policies encourage arbitra-

tion, different considerations apply where an employee's claim arises out of a special statute such as the FELA, which is designed to provide minimum substantive guarantees to individual workers. 107 S.Ct. at 1415. In *Barrentine v. Arkansas-Best Freight System,* 450 U.S. 728, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981), the Supreme Court held that certain rights found in the Fair Labor Standards Act, 52 Stat. 1060, as amended, 29 USC 201 *et seq.,* were not waivable in the context of a collective bargaining agreement. 450 U.S. at 745, 101 S.Ct. at 1447. The Court concluded that the rights were not waivable because they devolved on the employees as individual workers, not as members of a collective organization, and were therefore independent of the collective-bargaining process. To the same effect is *Lynn's Food Stores, Inc. v. United States, Etc.,* 679 F.2d 1350, 1352–53 (11th Cir.1982). These cases have no application here because they involved statutes designed to provide minimum *substantive* guarantees for individual employees. Those portions of the Civil Service Reform Act, with which we are concerned, are directed principally to the *procedures* by which civil servants are hired and fired. *See* S.Rep. No. 969, supra, at 4 and 51–52. Finally, *American Cyanamid Co. v. N.L. R.B.,* 592 F.2d 356 (7th Cir.1979), does not help McCall because that case did not hold that rights under the National Labor Relations Act, 29 U.S.C. § 151 *et seq.,* may not be waived.

### III.

McCall's alternative position is that even if his waiver is not void as a matter of public policy, the board should be required to conduct a hearing on the jurisdictional question. To be determined at the hearing would be such matters as whether the waiver was comprehensive and fair, and whether it was the result of duress or bad faith negotiation. Inquiry would also be made into whether the terms of the prior settlement agreement were violated.

■ We reject this argument. There is no statute which requires the MSPB to

hold a hearing on the question of jurisdiction. *See Wilson v. Merit Systems Protection Board,* 807 F.2d 1577, 1582–83 (Fed. Cir.1986); *Manning v. Merit Systems Protection Board,* 742 F.2d 1424, 1427–28 (Fed.Cir.1984). In *Manning,* the court held that it would be appropriate for the MSPB to hold a hearing where a petitioner's allegations raise non-frivolous issues of fact relating to jurisdiction which cannot be resolved simply on submissions of documentary evidence.

Here, McCall does not raise any non-frivolous issues of fact. The most he can say is that his union representative, Mr. Gant, who signed the agreement with McCall, opines that the intent of the parties was to allow McCall a large number of absences from work, provided these were approved and medically documented.

We do not think this raises any issue of fact. The settlement agreement which McCall signed speaks for itself. It is a contract, the interpretation of which is a question of law. *Bonner v. Merit Systems Protection Board,* 781 F.2d 202, 205 (Fed. Cir.1986). It was for the AJ to construe the settlement agreement, and Mr. Gant's possible difference of opinion thereon would not raise any issue of fact.

The terms of the settlement agreement were unambiguous, and the AJ gave them their plain and ordinary meaning. Accordingly, we hold that the AJ properly enforced the settlement agreement by upholding the waiver provision and dismissing McCall's appeal for lack of jurisdiction.

AFFIRMED