Joseph D. ALEXANDER, Petitioner,

v.

UNITED STATES POSTAL SERVICE,
Respondent.

No. 00–3415.

United States Court of Appeals,
Federal Circuit.

DECIDED: Aug. 29, 2001.

Jose Luis Ongay, of Philadelphia, PA,
argued for petitioner.

Hillary A. Stern, Attorney, Civil Division, Commercial Litigation Branch, Department of Justice, of Washington, DC, argued for respondent. With her on the brief were Stuart E. Schiffer, Acting Assistant Attorney General; David M. Cohen, Director; and Todd Hughes, Assistant Director. Of counsel on the brief were Eric J. Scharf, Managing Counsel for Civil Practice; and Brian M. Riemer, Attorney, United States Postal Service, of Washington, DC.

Before NEWMAN, Circuit Judge,
FRIEDMAN, Senior Circuit Judge, and
GAJARSA, Circuit Judge.

FRIEDMAN, Senior Circuit Judge.

This case involves two issues: whether the Merit Systems Protection Board

(Board) correctly ruled (1) that the petitioner Joseph D. Alexander had disobeyed his supervisor's order to return to work (thereby violating an agreement that had settled a prior removal action the Postal Service had instituted against him) and (2) that in the settlement agreement Alexander had waived the right to appeal to the Board his removal for violation of that agreement. We affirm the Board's first ruling, but reverse the second ruling and remand to the Board.

## I

On September 29, 1997, the United States Postal Service proposed to remove Alexander as a mail handler for "IMPROPER CONDUCT/THREATENING A POSTAL MANAGER." The notice alleged that in August 1997 Alexander, after a "verbal argument" with his supervisor, was told repeatedly to go home, but refused to leave; that he became "enraged and started screaming"; that subsequently, he "moved quickly and aggressively toward[ ] [his supervisor] throwing [his] left shoulder forward and attempting to slam [his] shoulder into [his supervisor's] right shoulder"; and that he had to be escorted from the area by the town police.

The matter was settled on June 11, 1998 by a "Last Chance Agreement" between Alexander and the Postal Service. The agreement stated that "in reference to the removal notice dated 9/29/97, proposing to remove you from the U.S. Postal Service," the agency would hold "the subject removal . . . in abeyance for a period of two (2) years" to give Alexander "a Last Chance Opportunity to demonstrate his/her dependability, reliability and suitability for employment." Alexander agreed that he would "meet all terms and conditions listed in this agreement" for two years, that "[i]f for any reason you are found incapable of safely performing the duties of your posi-

tion, no further consideration under this agreement will be granted and your removal will be effected," and that "future performance deficiencies, including, but not limited to, [a]ttendance, or failing to perform his/her assigned duties will also be grounds for removal." Paragraph 14 of the Agreement provided:

> It is agreed by all parties to this agreement that any violations of the terms or conditions of this agreement by the grievant will result in the removal being effected. In the event that the 9/29/97 removal is effected, grievant agrees to forego any appeal of the removal action in any forum including grievance/arbitration, (MSPB) merit system protection board [sic], or under EEO complaint processing procedures.

Sixteen months later, on October 20, 1999, the Postal Service again proposed to remove Alexander, this time for "VIOLATION OF LAST CHANCE AGREEMENT [sic] FAILURE TO COMPLY WITH THE TERMS AND CONDITIONS OF THE LAST CHANCE AGREEMENT SIGNED BY YOU ON June 11, 1998/FAILURE TO FOLLOW INSTRUCTIONS." The notice alleged that on October 4, 1999, Alexander "engaged in a verbal altercation with [another] employee [and] would not comply with [his supervisor's] repeated instructions to return to duty," and that Alexander's "failure to follow instructs [sic] resulted in your not completing the remainder of your work assignment on October 4, 1999."

After considering Alexander's response, the Postal Service removed him on December 8, 1999. It ruled that "the charges as stated in the notice dated October 20, 1999 are fully supported by the evidence and warrants your removal." It told Alexander that "[a]s a preference eligible, you have a right to appeal this decision in

writing to the Merit Systems Protection Board."

Alexander appealed his removal to the Board. After an evidentiary hearing, the Board's administrative judge issued an initial decision dismissing Alexander's appeal for lack of jurisdiction, which became final when the Board refused to review it. *Alexander v. United States Postal Serv.*, 86 M.S.P.R. 333, No. PH–0752–00–0129–I–1 (M.S.P.B. June 30, 2000) ("Initial Decision"). The Board found that "[t]he agency demonstrated that [Alexander] failed to follow [his supervisor's] instructions and therefore breached the [last chance] agreement." *Id.* at 6. The Board further found that "the instructions in question [to return to work] were those that Mr. Williams, as the appellant's supervisor, was entitled to give and have obeyed, notwithstanding the attendant circumstances." *Id.* at 8. Finally, the Board ruled that in the Agreement Alexander waived his right to appeal his removal. *Id.* at 9.

## II

■ A. Substantial evidence supports the Board's finding that Alexander disobeyed his supervisor's order on October 4, 1999 to return to work.

Alexander's supervisor (Mr. Williams) testified that late in the workday Alexander and a casual employee had an argument and were yelling at each other; that the supervisor told both to stop arguing and to return to work; that the casual employee did so but Alexander refused to; that Alexander stated that he was "at work" (even though he was not working); that he walked away stating that he was going to the bathroom; that he sought to discuss the matter with the supervisor, who refused to do so; and that he requested a shop steward, which his supervisor refused because all the stewards had left.

Alexander told his supervisor that he could not work with the casual employee. Despite repeated instructions from his supervisor, Alexander did not resume performing his duties. The supervisor then ordered Alexander to report to his office, which Alexander did.

Alexander testified that his supervisor told him to "go back to work" and "kept telling me to go back to work." Alexander told another official that "the reason for hi[s] failing to follow Mr. Williams' instructions" "was mainly that he was waiting for a union steward ... he was trying to get a union steward." He also gave other justifications for his conduct, including the claims that Williams had improperly pushed him when Williams sought to separate the arguing parties and that his supervisor "didn't give me any direct order" to do a specific task.

The administrative judge, who saw and heard the witnesses, committed no error in accepting the Postal Service's evidence and rejecting Alexander's justifications. We have no basis for rejecting the Board's finding that Alexander improperly refused to follow his supervisor's orders.

B. Alexander's challenge to the Board's determination that he violated the Agreement by disobeying his supervisor appears to be that although he disobeyed the orders to return to work, such disobedience was justified by the surrounding circumstances and did not constitute a violation of the Agreement.

The Board did not specifically discuss this question. All it said was that it "f[ou]nd that the appellant has failed to show that he complied with the terms of the LCSA in that he failed to perform his assigned duties as instructed." Initial Decision, slip op. at 8. In the proceedings on remand, the Board should address this issue in as much detail as necessary.

## III

The Board erred, however, in ruling that in the Agreement Alexander waived the right to appeal to the Board his removal for violating the Agreement.

■ The Agreement stated that it related to "the removal notice dated 9/29/97, proposing to remove you" for threatening a postal manager. The "subject removal" that under the Agreement would be held in abeyance for two years was the removal proposed in the September 1997 notice. Paragraph 14 of the Agreement, which contained the waiver of appeal rights, began by stating that any violation by Alexander of the Agreement "will result in the removal being effected." Once again, the "removal" to be effected was that proposed in the prior notice.

The next sentence of paragraph 14 stated:

In the event that the 9/29/97 removal is effected, grievant agrees to forego any appeal of the removal action in any forum including grievance/arbitration, (MSPB) merit system protection board [sic], or under EEO complaint processing procedures.

That provision unambiguously and explicitly waived the right of appeal in one circumstance: if "the 9/29/97 removal is effected," *i.e.,* if Alexander were removed for the reason stated in that notice of proposed removal for having threatened a postal supervisor in August 1997.

That was not the basis upon which the Postal Service removed Alexander on December 8, 1999. That removal was explicitly stated to be for violation of the Agreement by disobeying his supervisor's order to return to work on October 4, 1999. Nothing in the October 1999 notice of proposed removal or in the December 1999 removal notice indicates, or even suggests, that the Postal Service's action was "ef-fect[ing]" "the 9/29/97 removal" the only matter for which Alexander waived his right to appeal to the Board.

Further evidence that the appeal waiver in the Agreement did not cover Alexander's present removal is the statement in the notice of removal that "[a]s a preference eligible, you have a right to appeal this decision in writing to the Merit Systems Protection Board." The notice also gave Alexander information concerning such an appeal. There would be no reason for those statements if Alexander previously had waived his right to appeal his removal to the Board.

The limited nature of the waiver of Alexander's appeal rights sharply contrasts with the broad waiver at issue in *McCall v. U.S. Postal Service,* 839 F.2d 664, 665 (Fed.Cir.1988), where a last chance settlement agreement provided: "[a]ppeal rights to the Merit Systems Protection Board, Grievance–Arbitration and Equal Employment Opportunity complaint procedures are waived during this 1 year probationary period on any disciplinary action against Mr. McCall." The day after signing that agreement, the employee signed a further statement in which he stated: "I know and understand that I have appeal rights to the Merit Systems Protection Board with respect to appealing a removal action against me. By this agreement ... I ... of my own free will waive my rights to the Merit Systems Protection Board ... for the period of my 1 year probation." *Id.*

At the oral argument before us, the government contended that by removing Alexander for violating the Agreement, the Postal Service "effected" the earlier 1997 proposed removal. As previously discussed, the fatal flaw in that argument is that the Postal Service removed Alexander for disobeying his superior's order on October 4, 1999 to return to work (thereby violating the Agreement), and not for his

threats to a postal manager in 1997, on which the earlier proposed removal was based.

### CONCLUSION

The decision of the Merit Systems Protection Board is affirmed insofar as it determined that Alexander disobeyed the orders of his supervisor to return to work on October 4, 1999. The decision is reversed insofar as it held that in the Last Chance Agreement Alexander waived the right to appeal his 1999 removal to the Board and that the Board therefore had no jurisdiction over his appeal. The case is remanded to the Board for further proceedings relating to the merits of Alexander's challenge to his removal consistent with this opinion.

*AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.*