# United States Court of Appeals for the Federal Circuit

2007-3200

DORIS A. RICE,

Petitioner,

v.

MERIT SYSTEMS PROTECTION BOARD,

Respondent,

and

DEPARTMENT OF THE NAVY,

Intervenor.

Omar Vincent Melehy, Melehy & Associates, LLC, of Silver Spring, Maryland, argued for petitioner. With him on the brief was Andrew J. Perlmutter.

Joyce G. Friedman, Attorney, Office of the General Counsel, Merit Systems Protection Board, of Washington, DC, argued for respondent. With her on the brief were B. Chad Bungard, General Counsel, and Rosa M. Koppel, Deputy General Counsel.

Joan M. Stentiford, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for intervenor. With her on the brief were Jeanne E. Davidson, Director, and Todd M. Hughes, Deputy Director.

Appealed from: Merit Systems Protection Board

# United States Court of Appeals for the Federal Circuit

2007-3200

DORIS A. RICE,

Petitioner,

v.

MERIT SYSTEMS PROTECTION BOARD,

Respondent,

and

DEPARTMENT OF THE NAVY,

Intervenor.

Petition for review of the Merit Systems Protection Board in DC-0752-07-0091-I-1.

_____

DECIDED:   April 11, 2008

_____

Before BRYSON, GAJARSA, and LINN, Circuit Judges.

BRYSON, Circuit Judge.

Appellant Doris A. Rice appeals from a decision of the Merit Systems Protection Board.  The Board dismissed Ms. Rice's appeal from the decision of the Office of Naval Intelligence to remove her from the position of Information Technology Specialist.  We affirm the Board's dismissal order.

I

In December 1981, Ms. Rice was appointed to a competitive service position in the Naval Communications Unit, an agency within the Department of the Navy. As an employee in the competitive service, she was entitled to appeal adverse actions against her to the Board either after one year had passed or after she had completed any applicable trial or probationary period. 5 U.S.C. § 7511(a)(1)(A). The Naval Communications Unit does not perform intelligence activities.

In November 1985, Ms. Rice voluntarily accepted a new appointment to an excepted service position with the Naval Intelligence Processing System, a predecessor of the Office of Naval Intelligence. That agency (and its successor) performed intelligence activities. In connection with the new appointment, Ms. Rice signed a statement acknowledging that her acceptance of the new position meant that she was voluntarily separating from the competitive service and that she was being appointed to an excepted service position. The statement read as follows:

> By accepting this position, the following information is understood:
> (a) That I will be given an Excepted Appointment;
> (b) That this position cannot be filled by Competitive Service; and
> (c) That I will be taken out of the Competitive Service; and
> (d) That I volunteer to be separated from the Competitive Service.

In the following years, Ms. Rice held a number of other positions with the Office of Naval Intelligence and related intelligence components. In April 2005, however, the Office of Naval Intelligence terminated her for allegedly adulterating a urinalysis sample. She subsequently filed a discrimination complaint with the Navy's equal employment opportunity office, alleging that her removal was the result of discrimination based on race and sex. The Navy rejected her claim of discrimination, referring to a decision by

the Equal Employment Opportunity Commission in which an administrative judge ruled that the Navy had not discriminated against her. The notice of decision informed Ms. Rice that she had appeal rights to the Merit Systems Protection Board or to a United States District Court. The Navy subsequently notified Ms. Rice by letter that it had erroneously advised her that she had appeal rights to the Board and that in fact her appeal rights were limited to the Equal Employment Opportunity Commission or a United States District Court. Before receiving that notice, Ms. Rice filed an appeal of the removal action with the Board.

The Navy filed a motion to dismiss the Board appeal, contending that the Board lacked jurisdiction to entertain the appeal because, under 5 U.S.C. § 7511(b)(8), Ms. Rice was not entitled to appeal to the Board from an adverse action against her. Section 7511(b)(8) states that sections 7511 through 7514 of title 5, which govern adverse actions by agencies and authorize employees to take adverse action appeals to the Board, do not apply to a non-preference-eligible employee (such as Ms. Rice) whose position is within "an intelligence component of the Department of Defense." The administrative judge who was assigned to the case issued an order advising Ms. Rice that she had the burden of proving that the Board had jurisdiction over her appeal and ordering her to file evidence and argument to establish the Board's jurisdiction.

In response, Ms. Rice argued that, as an excepted service employee who had completed more that two years of continuous service in the same position, she was entitled to appeal her removal to the Board under 5 U.S.C. § 7511(a)(1)(C). She argued that section 7511(b)(8) did not exclude her from the Board's jurisdiction because, under the rationale of Czarkowski v. Merit Systems Protection Board, 390 F.3d 1347 (Fed. Cir.

2004), the Navy had failed to show that the Secretary of Defense had explicitly designated the Office of Naval Intelligence as an intelligence component of the Department of Defense. Additionally, Ms. Rice argued that under <u>Clarke v. Department of Defense</u>, 102 M.S.P.R. 559 (2006), the Board retained jurisdiction over her removal appeal because Office of Naval Intelligence had not given her "actual notice of the potential loss of her appeal rights" when she accepted a "reassignment" to an excepted service position from her previous position in the competitive service. Finally, Ms. Rice contended that her appeal rights to the Board were preserved under the "grandfather" clause of 10 U.S.C. § 1612(b)(1). That provision, she alleged, affords an employee appeal rights if the employee's transfer into an excepted service position in an intelligence unit was immediately preceded by a position within the same agency that was subject to Board appeal rights.

The administrative judge dismissed Ms. Rice's appeal for lack of jurisdiction. The administrative judge found that the Office of Naval Intelligence is an intelligence component of the Department of Defense and that <u>Czarkowski</u> is inapposite because that case involved 5 U.S.C. § 2302(a)(2)(C)(ii), a different statute with a different standard than 5 U.S.C. § 7511(b)(8), the jurisdictional statute at issue in this case. The administrative judge noted that section 2302(a)(2)(C)(ii) exempts employees from the right to appeal to the Board in whistleblower cases if they work for an agency "the principal function of which is the conduct of foreign intelligence or counterintelligence activities . . . as determined by the President." The administrative judge found that section 7511(b)(8) requires no such explicit exemption by the President.

The administrative judge found <u>Clarke</u> distinguishable because Ms. Rice had received express written notice that she was relinquishing her rights as a competitive service employee to accept an excepted service position.  The administrative judge also rejected Ms. Rice's argument that 10 U.S.C. § 1612(b)(1) preserved her Board appeal rights because she did not previously work in a position with Board appeal rights that was reestablished as an excepted service position under 10 U.S.C. § 1601.  Concluding that Ms. Rice had failed to satisfy her burden to show that the Board had jurisdiction in the case, the administrative judge dismissed the appeal.

II

An individual who appeals to the Board under 5 U.S.C. § 7701 bears the burden of proving that the Board has jurisdiction.  <u>See</u> <u>Monasteri v. Merit Sys. Prot. Bd.</u>, 232 F.3d 1376, 1378 (Fed. Cir. 2000); 5 C.F.R. § 1201.56(a)(2)(i).  To satisfy that burden, the appellant must first make a non-frivolous allegation of facts sufficient to establish jurisdiction; if such a showing is made, the appellant is entitled to a hearing at which the appellant bears the burden of showing Board jurisdiction by a preponderance of the evidence.  <u>See</u> <u>Garcia v. Dep't of Homeland Sec.</u>, 437 F.3d 1322, 1344 (Fed. Cir. 2006) (en banc).  The Board held, and we agree, that Ms. Rice failed to make a non-frivolous allegation of facts sufficient to prove jurisdiction.

A

Ms. Rice argues that the Office of Naval Intelligence does not qualify as an intelligence component of the Department of Defense under 5 U.S.C. § 7511(b)(8), and that she was therefore not excluded from the definition of an "employee" for purposes of adverse action appeals.  The Board, however, correctly ruled that an order issued by

the Department of Defense, Directive 5240.1, establishes that the Office of Naval Intelligence is an intelligence component of the Department of Defense within the meaning of section 7511(b)(8).

As she did before the Board, Ms. Rice bases her argument on this court's decision in <u>Czarkowski</u>. She interprets <u>Czarkowski</u> to mean that in order for an agency to qualify as an "intelligence component of the Department of Defense" within the meaning of section 7511(b)(8), the document designating the agency as having that status must specifically reference the two statutory provisions, 5 U.S.C. § 7511(b)(8) and 10 U.S.C. § 1614(2), that render inapplicable the provisions of title 5 governing adverse action appeals.

We decline to read <u>Czarkowski</u> so broadly. The statute at issue in <u>Czarkowski</u> required the President or his delegate to decide that a particular agency had as its "principal function" the "conduct of foreign intelligence or counterintelligence activities." <u>Czarkowski</u>, 390 F.3d at 1349, <u>quoting</u> 5 U.S.C. § 2302(a)(2)(C)(ii). This court rejected the government's argument that the Board could make that determination for the President by reviewing documentary evidence suggesting that an agency has been determined to have the principal function of conducting such activities. The court pointed out that many agencies have some authority to conduct intelligence activities, but that the statute "assigns to the President the task of identifying which agencies meet the 'principal function' test." <u>Czarkowski</u>, 390 F.3d at 1350. That determination, the court added, "surely is a delicate call in some circumstances, and it certainly is a call that Congress has left to the President or his delegate." <u>Id.</u> The court then set forth its ruling as follows:

The statutory language does not suggest that the Board can effectively make a determination for the President by reviewing documentary evidence that may suggest an agency has been determined to have the principal function of conducting foreign intelligence or counterintelligence activities. Documents that suggest to the Board that a Presidential determination should or could have been made cannot stand as a proxy for an actual Presidential determination that references the statute. The burden is on the agency to show that the President, or his delegate, has explicitly exempted an agency or unit thereof under section 2302(a)(2)(C)(ii).

Id.

Seizing on the reference in the portion of the Czarkowski opinion quoted above to "an actual Presidential determination that references the statute," Ms. Rice argues that Department of Defense Directive 5240.1 was insufficient because it failed to cite 5 U.S.C. § 7511(b)(8) and 10 U.S.C. § 1614(2). However, nothing in section 7511(b)(8) or section 1614(2) requires that the determination by the Secretary of Defense that an agency is an intelligence component of the Department of Defense be accompanied by a citation to the pertinent statutes or else be deemed insufficient. Section 7511(b)(8) requires only that the employee's position be within "an intelligence component of the Department of Defense (as defined in section 1614 of title 10)." 5 U.S.C. § 7511(b)(8). Section 1614 defines "intelligence component of the Department of Defense" to include any "component of the Department of Defense that performs intelligence functions and is designated by the Secretary of Defense as an intelligence component of the Department of Defense." 10 U.S.C. § 1614(2)(D). The determination that the Naval Intelligence Service is an intelligence component of the Department of Defense was made in haec verba in Department of Defense Directive 5420.1. In particular, Directive 5240.1 designates the Office of Naval Intelligence as one of the named Department of

Defense "Intelligence Components" and identifies it as a component of the Department of Defense that "conduct[s] intelligence activities." The Directive therefore explicitly identifies the Office of Naval Intelligence as a designated intelligence component of the Department of Defense that performs intelligence functions. Finally, Directive 5240.1 was issued by the Deputy Secretary of Defense, the lawful delegate of the Secretary of Defense. That is all that is required by section 7511(b)(8) and section 1614(2).

It is true that the court in Czarkowski stated that "an actual Presidential determination that references [section 2302(a)(2)(C)(ii)]" would suffice to satisfy the statutory exemption, while "[d]ocuments that suggest to the Board that a Presidential determination should or could have been made" would not. 390 F.3d at 1350. While the court clearly indicated that a determination that included a statutory reference would be sufficient, it did not hold that an express Presidential determination would be invalid absent an explicit reference to section 2302. Because there was no Presidential determination at all in Czarkowski, it was not necessary for the court to decide whether a statutory reference is a sine qua non of such determination. At least in the context of the determination referred to in section 7511(b)(8), which merely requires a statement that the agency in question is an intelligence component of the Department of Defense, we hold that such a statutory reference is not required. Just as in Czarkowski the critical question was whether the President or his delegate "has explicitly exempted an agency or unit thereof under section 2302(a)(2)(C)(ii)," 390 F.3d at 1350, the critical question in this case is whether the Secretary of Defense or his delegate has designated the agency as an intelligence component of the Department of Defense under sections 7511(b)(8) and 1614(2). That determination was plainly made, and an

express reference to the pertinent statutes would add nothing of substance to that determination. Accordingly, we hold that the Board properly ruled that Ms. Rice's position fell within 5 U.S.C. § 7511(b)(8) and that she was not an employee who would be entitled under 5 U.S.C. § 7513(d) to appeal an adverse action to the Board.[1]

B

Ms. Rice also contends that she was not given sufficient notice at the time she accepted the appointment to the Naval Intelligence Command that she would no longer have the right to appeal to the Board from any adverse action. She argues that the notice that she was moving from a competitive service position to an excepted service position and the form that she signed acknowledging that she was voluntarily separating from the competitive service were not sufficient to advise her of the change in her Board appeal rights because the notice she was given was not sufficient to give rise to a "knowing and voluntary" waiver of those rights.

Ms. Rice first contends that in light of McCall v. United States Postal Service, 839 F.2d 664 (Fed. Cir. 1988), Reise v. Merit Systems Protection Board, 37 M.S.P.R. 364 (1998), and Ferby v. United States Postal Service, 26 M.S.P.R. 451 (1985), she cannot be deemed to have waived her Board appeal rights unless she signed a written statement indicating that she knowingly waived those rights. We reject that argument.

---

[1] The administrative judge decided this case based on her conclusion that the Office of Naval Intelligence is "an intelligence component of the Department of Defense (as defined in section 1614 of title 10)." Neither the administrative judge nor the parties have discussed whether the Office of Naval Intelligence would also qualify for inclusion within section 7511(b)(8) as "an intelligence activity of a military department covered under subchapter I of chapter 83 of title 10." For that reason we do not rest our decision on that ground.

The cases on which Ms. Rice relies all deal with waivers signed in the context of "last chance" agreements. "Last chance" agreements are used to settle conflicts between employees and agencies; the employee typically agrees to waive Board appeal rights in exchange for favorable settlement terms allowing the employee a "last chance" to perform according to the agency's expectations. A "last chance" appeal waiver is very different from a change in appeal rights that accompanies the voluntary acceptance of an excepted service position. The former is a waiver of a right that attaches to the employee's ongoing position; the latter simply reflects a difference in the rights associated with one position occupied by the employee and another to which the employee has chosen to transfer. We decline to apply the same standard to the waiver of an existing statutory right to appeal to the Board (as in a last chance agreement) and to the waiver of Board appeal rights when an employee voluntarily accepts appointment to a position that carries different statutory appeal rights (as in the case of a transfer to a Defense Department intelligence agency).

Relying on a line of Board decisions that includes Clarke v. Department of Defense, 102 M.S.P.R. 559 (2006); Park v. Department of Health and Human Services, 78 M.S.P.R. 527 (1998), and Exum v. Department of Veterans Affairs, 62 M.S.P.R. 344 (1994), Ms. Rice next argues that she could not lawfully be deprived of her right to appeal to the Board unless she was explicitly notified that she was losing her Board appeal rights when she accepted a position with the Naval Intelligence Command. She contends that because there is no evidence that she was notified of the loss of appeal rights, she retained her Board appeal rights from that time until her removal.

Before the administrative judge, Ms. Rice did not deny that she was informed of the change in her Board appeal rights; she simply stated that she did not recall having been so advised. Unsurprisingly, the agency was unable to introduce any evidence regarding any oral statement that may have been made at the time of Ms. Rice's appointment to the excepted service in 1985 regarding her appeal rights; the agency's evidence was limited in this regard to the written statement that Ms. Rice signed acknowledging that she was entering the excepted service and was being "taken out of the Competitive Service," and "volunteer[ed] to be separated from the Competitive Service." Based on that evidence, the administrative judge distinguished the cases on which Ms. Rice relied on the ground that she "did receive notice that she was relinquishing her rights as a competitive service employee to accept an excepted service position." Under those circumstances, the administrative judge held that she did not retain a right to appeal from her removal during the 20 years after her transfer to the excepted service.

Ms. Rice responds that the administrative judge's opinion is contrary to the Board's decisions in cases such as Clarke, Park, and Exum. Ms. Rice is correct that the Board cases on which she relies set forth a broad rule that, if applied in this case, would appear to accord Board appeal rights to a person in Ms. Rice's position, or at least call for a jurisdictional hearing as to whether she was given appropriate notice of the loss of her Board appeal rights that would result from her joining the excepted service. In Park, for example, the Board stated the rule as follows:

> An employee must receive notice from his employing agency regarding the effect of a change in tenure before he can relinquish an agency appointment with career tenure and adverse action appeal rights to accept another appointment within the agency that lacks such tenure and appeal

rights. . . . An employee who has not knowingly consented to the loss of career tenure and appeal rights in accepting another appointment with the agency is thus deemed not to have "accepted" the new appointment and to have retained the rights incident to the former appointment; the Board therefore may exercise jurisdiction over an appeal of an adverse action against that employee.

Park, 78 M.S.P.R. at 534; see also Clarke, 102 M.S.P.R. at 562-63; Edwards v. Dep't of Justice, 86 M.S.P.R. 404, 406 (2000). In the brief it filed as respondent in this case, the Board distinguishes some of the cases in that line of decisions on the ground that Ms. Rice was expressly advised that she was transferring from the competitive service to the excepted service. For that reason, the Board contends that, unlike in Exum, the Navy had no reason to believe that Ms. Rice was under a misapprehension about the change in her appeal rights that resulted from her transfer to a new position, and unlike in Kaiser v. Department of the Army, 75 M.S.P.R. 440 (1997), Ms. Rice was alerted to the fact that her job status was being changed in an important respect.

What the Board in its brief seems to overlook in characterizing those cases narrowly is that the Board's own rule is quite broad. It requires that the employing agency not merely advise the employee of the change in his job status, but that the agency expressly advise the employee regarding the loss of tenure and Board appeal rights that is attendant to that change. Moreover, under the Board's rule, at least as stated in the Edwards and Park cases, the agency's duty to advise the employee of the loss of Board appeal rights appears to apply without regard to whether there was evidence that the agency knew or should have known that the employee was operating under the misapprehension that the transfer to a new position would not result in the employee's loss of appeal rights.

The Board case that is closest to this one is <u>Clarke</u>. In that case an employee transferred from a non-intelligence component within the Department of Defense to an intelligence component and thereafter was involuntarily transferred to other positions within the intelligence component. The effect of the transfers was that, when she was removed from her position, she was statutorily ineligible to appeal the removal action to the Board. Because she had not been advised of, and did not knowingly consent to, the loss of her appeal rights, however, the Board held that she was "deemed to have retained the rights incident to her former position." 102 M.S.P.R. at 563. The Board therefore held that, even though she fell within 5 U.S.C. § 7511(b)(8), the Board had jurisdiction over her removal appeal.

The Board, <u>qua</u> litigant, makes two weak efforts to distinguish this case from the decision in <u>Clarke</u>, issued by the Board <u>qua</u> adjudicative body. First, the Board in its brief argues that because Ms. Clarke remained in the same position following her transfer, "the Board found that Ms. Clarke's appeal rights were impacted by 10 U.S.C. § 1612(b)." In fact, the Board in <u>Clarke</u> found that because Ms. Clarke changed positions twice after joining the intelligence component, she did <u>not</u> have Board appeal rights by virtue of section 1612(b); that is the reason the Board in <u>Clarke</u> invoked the <u>Park</u> rule, which otherwise would have been unnecessary. Section 1612(b) therefore does nothing to distinguish this case from <u>Clarke</u>. Second, the Board in its brief argues that under the circumstances, Ms. Clarke "could not have been expected to know that she was relinquishing her appeal rights," while Ms. Rice was informed "of her change in service status." While that much is true, there is no evidence that Ms. Rice was informed that one effect of her change in service status was that she would lose her

Board appeal rights. Merely informing Ms. Rice that she was moving from the competitive service to the excepted service would not seem sufficient to satisfy the Board's standard, which requires that the employee "knowingly consent to the loss of her appeal rights." See Clarke, 102 M.S.P.R. at 563.

For those reasons, we do not believe the Board's decisions cited above can be persuasively distinguished on the grounds offered by the Board in its brief (and the similar grounds offered by the Department of the Navy as intervenor). We need not decide whether we would adopt the rule set forth in the cite line of Board cases, however, because the Board's jurisdictional ruling can be affirmed on a different ground, as set forth below.

In 1985 Ms. Rice took a position in the excepted service. At that point, her status as a non-preference-eligible employee in the excepted service meant that she did not have Board appeal rights, because the Civil Service Due Process Amendments, Pub. L. No. 101-376, 104 Stat. 461 (1990), which gave appeal rights to many such individuals in the excepted service, had not yet been enacted. In 1990, when the Civil Service Due Process Amendments statute was enacted, non-preference-eligibles in the excepted service were given Board appeal rights under the provision that became 5 U.S.C. § 7511(a)(1)(C). However, another provision of the same Act, which became 5 U.S.C. § 7511(b)(8), had the effect of denying Board appeal rights to all non-preference-eligible employees of "an intelligence activity of a military department covered under section 1590 of title 10." Six years later, in the National Defense Authorization Act for Fiscal Year 1997, Pub. L. No. 104-201, § 1634, 110 Stat. 2422, 2753 (1996), Congress again amended section 7511(b)(8), this time adding the reference to "an intelligence

component of the Department of Defense (as defined in section 1614 of title 10)," the language that the administrative judge relied on to hold that Ms. Rice was not entitled to appeal her removal to the Board. Thus, as of 1996, it was not Ms. Rice's status as an excepted service employee that barred her from having Board appeal rights, but rather her status as a non-preference-eligible employee of "an intelligence component of the Department of Defense" under section 7511(b)(8). Even if Ms. Rice had enjoyed Board appeal rights before 1990 or 1996, she would have lacked them afterwards because of the operation of that statute.

There is no suggestion that the 1990 and 1996 amendments to section 7511(b)(8) cannot be given their intended effect as to Ms. Rice because she was not told at the time of those amendments about the effect they would have on her Board appeal rights. By 1996, it was clear that that section 7511(b)(8) denied Board appeal rights to an employee in her position, and the statutory language is mandatory. See 5 U.S.C. § 7511(b)(8) ("This subchapter [sections 7511-7514 of title 5] does not apply to an employee— . . . whose position is within . . . an intelligence component of the Department of Defense"). Because Ms. Rice was working in an intelligence component at the time Congress excluded non-preference-eligible employees of such components from the Board's adverse action jurisdiction, the statute foreclosed her—then and at the time of her subsequent removal—from appealing to the Board.

In that setting, to "deem" an employee such as Ms. Rice not to have accepted the appointment in the Naval Intelligence Command in 1985 and to have remained a non-employee of that component until the time of her removal would base Board jurisdiction on a fiction. That fiction, moreover, would fly in the face of Congress's determination

that an employee such as Ms. Rice should not have the rights created by sections 7511 through 7514 of title 5, including the right to appeal removal actions to the Board under section 7513(d).

Any failure in 1985 to give Ms. Rice explicit notice that non-preference-eligible employees in the excepted service lack Board appeal rights is insignificant in light of the amendments in 1990 and 1996 to section 7511(b)(8), which denied Board appeal rights to all employees of Defense intelligence components except for preference eligibles. Accordingly, without addressing whether notice of the loss of appeal rights might be required in other settings, as the Board has ruled, we hold that the Board lacks jurisdiction over Ms. Rice's appeal regardless of any failure to alert her to the loss of Board appeal rights when she first joined the excepted service.

<u>AFFIRMED</u>.