NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**ALEXANDER L. COOPER,**
*Petitioner,*

**v.**

**DEPARTMENT OF VETERANS AFFAIRS,**
*Respondent.*

---

2012-3112

---

Appeal from the Merit Systems Protection Board in No. NY0752110003-I-1.

---

Decided: February 7, 2013

---

ALEXANDER L. COOPER, of Montrose, New York, pro se.

P. DAVIS OLIVER, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for respondent. With him on the brief were STUART F. DELERY, Acting Assistant Attorney General, JEANNE E. DAVIDSON, Director, and REGINALD T. BLADES, JR., Assistant Director.

---

Before RADER, *Chief Judge,* SCHALL and BRYSON, *Circuit Judges.*

Alexander Cooper appeals the final decision of the Merit Systems Protection Board dismissing his appeal of his removal from his position with the Department of Veterans Affairs ("DVA"). We affirm.

BACKGROUND

Prior to his removal, Mr. Cooper had been employed at the DVA Hudson Valley Health Care System since 1989. He was initially hired as a temporary housekeeping aide. After March 6, 2005, he worked as a pipe fitter for the agency. On March 11, 2010, Mr. Cooper became involved in an altercation with a coworker. Ignoring a warning from his supervisor not to escalate the dispute, Mr. Cooper struck the coworker in the face. He subsequently refused to take a sobriety test, and his supervisor attributed the incident to his "apparent intoxication." The DVA decided to remove Mr. Cooper, effective September 3, 2010, both for failing to follow instructions and for striking a coworker. He appealed that decision to the Board.

While the appeal was pending, Mr. Cooper and the DVA entered into a "Last Chance Agreement" ("LCA") on December 6, 2010. Pursuant to the LCA, the DVA agreed to hold the decision to remove Mr. Cooper in abeyance for two years. During that time Mr. Cooper would be subject to "random urine and/or breath analyzer testing for alcohol." The DVA also suspended Mr. Cooper for 60 days, which ran during the time he appealed the initial removal decision. Mr. Cooper explicitly waived "his right to challenge his removal in the event that the Agency effects the removal action being held in abeyance" due to his failure to comply with the agreement. However, the LCA provided that "Mr. Cooper has not waived any rights

or claims, not specified above, that may arise after the date this agreement is signed." It also stated that "Mr. Cooper had the right to consult with a representative of his choice prior to signing to the agreement" and that he had read and understood its terms. The administrative judge assigned to Mr. Cooper's appeal dismissed the case on December 22 due to the settlement between the parties.

On January 14, 2011, after Mr. Cooper had been reinstated, a supervisor believed he smelled alcohol on Mr. Cooper's breath and instructed him to submit to a breathalyzer test. Mr. Cooper reluctantly complied, and the test measured his blood-alcohol level at .052 percent. The DVA removed Mr. Cooper on January 22, citing his violation of the LCA. Mr. Cooper appealed that decision.

A different administrative judge was assigned to that appeal, and after reviewing the LCA, she stated that "there are numerous problems with it." She noted that the LCA referred to Mr. Cooper's "removal letter dated June 16, 2010," when in fact the removal letter was sent on August 16. More fundamentally, the administrative judge stated that "[i]t seems . . . that there are conflicting provisions in the agreement and that—until now—no one has considered the ramifications of the conflicting provisions." Those provisions "allow[ed] the agency to take two adverse actions—a sixty-day suspension and a removal action—against the appellant for the same misconduct." In addition, after considering both the DVA's removal letter and the agency's written submissions, the administrative judge concluded that the decision to remove Mr. Cooper "was not based on the incidents that were the subject of [the] August 16, 2010 decision. Rather, the appellant's January 22, 2011 removal was based on the incident of January 14, 2011." In other words, the administrative judge believed that the DVA was not merely effecting the decision to remove Mr. Cooper for violating the LCA, but had actually removed him for the separate

infraction of appearing at work intoxicated in January
2011. The administrative judge therefore directed the
parties to meet and confer to discuss the problems with
the LCA and suggested that they draft a new agreement.

Before the second administrative judge took any
further action, Mr. Cooper on May 26, 2011, filed a sepa-
rate challenge to the first administrative judge's Decem-
ber 22, 2010, decision, which had dismissed his initial
appeal pursuant to the LCA.[1] Mr. Cooper argued that the
LCA was invalid because it permitted the DVA to disci-
pline him twice for his March 2010 misconduct. Because
that separate, original appeal could result in the invalida-
tion of the LCA—and therefore eliminate the DVA's
grounds for removing Mr. Cooper—the second adminis-
trative judge dismissed his appeal from his January 22
removal action without prejudice. Mr. Cooper has not
sought review of that dismissal.

The full Board rejected Mr. Cooper's challenge to
the LCA. Although it recognized that an employee has a
substantive right not to receive two disciplinary actions
for the same misconduct, it ruled that, by signing the
LCA, Mr. Cooper waived that right in the event he violat-
ed the terms of the LCA. The Board noted that it had
already recognized that an employee may waive certain
significant statutory rights, such as the right to an ap-
peal, by entering into an LCA. It reasoned that permit-
ting waivers of the right against repeated discipline would
encourage agencies to enter into LCAs to conserve re-
sources otherwise spent on an appeal, and to avoid unnec-
essarily removing a valuable employee while still

---

[1] Because Mr. Cooper filed his appeal to the Board more
than 35 days after the administrative judge's decision, his
appeal was untimely. 5 C.F.R. § 1201.114(e). The Board
did not address the issue of untimeliness, and that issue
is not involved in this appeal.

imposing corrective action. Because Mr. Cooper's waiver was "lawful on its face, [and] was freely entered into by the parties," the Board rejected his challenge. Mr. Cooper timely appeals the Board's decision to this court.

## DISCUSSION

The Board's decision dismissing Mr. Cooper's initial appeal pursuant to the LCA is a "final order" over which this court has jurisdiction. 5 U.S.C. § 7703(b)(1)(A). If the LCA is invalid in its entirety,[2] the DVA's decision to effect his removal pursuant to that agreement would lack foundation. By signing the LCA, Mr. Cooper explicitly waived his right to challenge the DVA's 2010 decision to remove him. Therefore, to overcome that waiver, he must show that the DVA acted in bad faith or took an arbitrary or capricious action, or that the LCA is invalid for having deprived him of a substantive right. *McCall v. U.S. Postal Serv.*, 839 F.2d 664, 667 (Fed. Cir. 1988). He cannot meet that burden. [3]

Mr. Cooper's first objection to the LCA is that it did not provide him the opportunity to complete substance abuse treatment before returning to work. He has indicated that he successfully completed several substance abuse treatment programs and currently participates in Alcoholics Anonymous. Mr. Cooper argues that the LCA arbitrarily denied him the opportunity to complete these programs—which he estimates would have required a

---

[2] The LCA includes a severability clause that applies if any individual provision is invalidated.

[3] Mr. Cooper references the administrative judge's observation that the LCA in one instance cites the incorrect date for his initial removal letter. However, we agree with the administrative judge that this is merely a "typographical error" that does not materially affect the meaning or validity of the agreement's terms.

nine-month leave—before requiring him to return to work.

"A last-chance agreement is a settlement agreement, and a settlement agreement is a contract." *Link v. Dep't of the Treasury*, 51 F.3d 1577, 1582 (Fed. Cir. 1995). By signing the LCA, Mr. Cooper was contractually bound by its terms. The LCA required Mr. Cooper to return to work and did not permit him to take an extended leave to complete substance abuse treatment. Mr. Cooper does not argue that he believed he was entitled to take time off for treatment or that he did not freely consent to each term of the LCA. The DVA did not act in bad faith or arbitrarily in requiring Mr. Cooper to resume his duties, and Mr. Cooper has no substantive right to extended leave to receive substance abuse treatment. The Board properly held that the LCA was valid without including such a provision.

Mr. Cooper also argues, as he did before the Board, that the LCA is invalid because it improperly subjected him to two disciplinary actions for the same misconduct. But including a suspension as a term of an LCA is not a novel practice, *see e.g., Jarman v. Dep't of the Navy*, 144 F.3d 794, 795 (Fed. Cir. 1998), and the Board did not abuse its discretion or misstate the law by ruling that Mr. Cooper voluntarily waived his rights not to be subject to both a suspension and removal.

In fact, the 60-day suspension in this case was not actually a separate disciplinary event. The LCA contemplated only one adverse action: removal. It held the removal in abeyance and, in effect, limited the removal to a 60-day suspension for as long as Mr. Cooper abided by its terms. But if the DVA ultimately removed Mr. Cooper for violating the LCA, it would effect the original, and only, adverse action against him. The Board in this case analogized the restriction against disciplining an employee twice to the constitutional bar against double jeopardy

in the criminal context. We can extend that analogy by comparing Mr. Cooper's situation to that of a criminal offender on probation. A portion of the offender's sentence is suspended, pending his successful completion of certain requirements. Reinstating a probation violator's full sentence does not violate the prohibition against double jeopardy. *United States v. DiFrancesco*, 449 U.S. 117, 137 (1980) ("[T]here is no double jeopardy protection against revocation of probation."). In this case, Mr. Coop-er's removal under the LCA would not constitute a second adverse action. Therefore, the LCA did not violate Mr. Cooper's substantive right against repeated discipline, even if he had not waived it.

As an alternative, Mr. Cooper restates the administrative judge's suspicion that he was removed for appearing at work intoxicated in January 2011, and that the DVA did not simply effect its decision to remove him for striking a coworker in 2010. This is an important distinction because Mr. Cooper waived only his right to contest the August 2010 removal; he explicitly reserved the right to challenge any new adverse action. *See Alexander v. U.S. Postal Serv.*, 264 F.3d 1067, 1070-71 (Fed. Cir. 2001) (employee who signed an LCA did not waive right to challenge removal decision based on later infraction). Regarding the January 2011 incident, Mr. Cooper notes that his .052 blood-alcohol level was significantly lower than the New York state legal limit for driving under the influence, and he states that he merely drank alcohol the night before he went to work and took the breathalyzer test. There is also some doubt that the breathalyzer test demanded by Mr. Cooper's supervisor was "random" in the sense contemplated in the LCA; the agreement does not explicitly subject Mr. Cooper to suspicion-based sobriety tests on demand.

Regardless of the merits of these arguments, however, Mr. Cooper's objections to his removal in 2011 are not properly before us. Mr. Cooper has already appealed

the DVA's January 2011 decision to remove him. The administrative judge dismissed that appeal without prejudice so that he could pursue his challenge to the December 2010 LCA, at issue here. He has not sought review of the dismissal of his appeal from the January 2011 removal decision, and the Board did not rule on it. As a result, the DVA's later decision to remove Mr. Cooper (or to effect the earlier decision to remove him) is not part of this appeal. We therefore do not reach Mr. Cooper's challenge to that decision. We hold only that the Board did not err in ruling that the LCA was valid and that Mr. Cooper has thereby waived his right to challenge the DVA's 2010 removal decision. The effect this ruling will have on Mr. Cooper's ultimate removal depends on the disposition of any further proceedings the Board may conduct to review that adverse action.

No costs.

**AFFIRMED**