# United States Court of Appeals for the Federal Circuit

—————————

**THE MINESEN COMPANY,**
*Appellant,*

**v.**

**JOHN MCHUGH, SECRETARY OF THE ARMY,**
*Appellee.*

—————————

2010-1453

—————————

Appeal from the Armed Services Board of Contract Appeals in No. 56346, Administrative Judge Michael T. Paul.

—————————

Decided: March 2, 2012

—————————

SANDRA B. WICK MULVANY, McKenna Long & Aldridge LLP, of Denver, Colorado, argued for appellant. With her on the brief were THOMAS A. LEMMER and JOSEPH G. MARTINEZ,III.

JAMES SWEET, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for appellee. With him on the brief were TONY WEST, Assistant Attorney General, JEANNE E. DAVIDSON, Director, and KIRK MANHARDT, Assistant Director. Of counsel on the brief

were SCOTT N. FLESCH and ERICA BEARDSLEY, Trial Attorneys, United States Army Litigation Center, Contract Appeals Division, of Arlington, Virginia.

---

Before BRYSON, O'MALLEY, and REYNA, *Circuit Judges.*

Opinion for the court filed by *Circuit Judge* REYNA.
Dissenting opinion filed by *Circuit Judge* BRYSON.

REYNA, *Circuit Judge.*

The Minesen Company ("Minesen") appeals the final decision of the Armed Services Board of Contract Appeals ("ASBCA" or "Board") which granted the motion to dismiss of the United States Army's Morale, Welfare, and Recreation Fund ("the Fund"). Minesen has been under contract with the Fund since 1993 to build and operate a hotel facility at a military base on Oahu Island, Hawaii. With eighteen years remaining on the agreement, the ASBCA determined that the Fund breached the core of the contract and the parties entered the quantum phase of the dispute. While in the quantum phase, Minesen filed a separate complaint alleging that the Fund had done nothing to cure its ongoing breach. The ASBCA dismissed Minesen's second complaint as duplicative of the first breach of contract action. Minesen appeals the ASBCA dismissal of its second complaint. Because we find that Minesen voluntarily waived its right to appeal to this court under its negotiated contract with the Fund, we *dismiss*.

## I. BACKGROUND

Minesen, a small business from Denver, Colorado, was created for the purpose of acquiring and fulfilling government contracts. In January of 1993, after several years of negotiation, Minesen and the Fund entered into

Contract No. NAFBA3-93-C-0001 ("the Contract") to create accommodations for travelling military personnel. The Contract provided that Minesen would construct and operate, for a term of thirty-two years, a "transient lodging facility" at Schofield Barracks in central Oahu. Joint Appendix ("J.A.") 272. Schofield Barracks is an 18,000 acre site twenty-three miles northwest of Honolulu, and is the largest Army installation in Hawaii. The Minesen lodging facility, to be built on four acres leased from the government, became known as the Inn at Schofield Barracks ("the Inn"). The Inn was to feature 184 rooms with kitchenettes, as well as other hotel amenities such as a vending area, guest laundry, playground, convenience store, and deli. *Id.* On a secure installation, the Inn would offer lodging only to eligible active and temporary military personnel, their families, and qualifying veterans. Under the Contract, Minesen's lease and operation of the Inn terminates in 2026. *Id.*

In addition to revenue generated operating the facility, Minesen's consideration for the bargain was that the Inn was officially deemed "government quarters" under the Joint Federal Travel Regulation ("JFTR"). *Id.* at 274. This designation was significant because it required travelling military personnel to patronize the Inn or else forfeit reimbursement for lodging costs. The Contract stated:

> The completed [Inn] will fall within the current Joint Federal Travel Regulation definition of government quarters. . . . Travelers receiving government per diem payment, in order not to forfeit their per diem entitlement, will be required to patronize the [Inn] on a mandatory basis as long as confirmed reservation priorities are in accordance with those provided at Section III, Operation Requirements.

*Id.* The Contract did not require the Fund to deliver any specific level of occupancy to the Inn.

The Contract indicated on its face that "NO FUNDS OF THE UNITED STATES GOVERNMENT WILL BE PAID OR BE DUE TO THE CONTRACTOR BY VIRTUE OF THIS CONTRACT." *Id.* at 271 (emphasis original). In the definition section, the Contract further specified that: "The Fund is . . . a nonappropriated fund instrumentality (NAFI) of the United States . . . . The Government is not a party to this contract, and no funds appropriated by Congress are in any way obligated or can be obligated by virtue of any provision of this contract." *Id.* at 273.

Significant for purposes of this appeal are the Contract's express provisions regarding dispute resolution. In the "Disputes Clause" at § II(6), the Contract stated:

a. This contract is *not* subject to the Contract Disputes Act of 1978 (41 U.S.C. 601-613).

* * *

c. All disputes arising under or relating to this contract shall be resolved under this clause.

* * *

g. The Contracting Officer's decision shall be final unless the Contractor appeals as provided in paragraph h. of this clause.

h. The Contracting Officer's final decision may be appealed by submitting a written appeal to the Armed Services Board of Contract Appeals within 90 days of receipt of the Contracting Officer's final decision. Decisions of the Armed Services Board of Contract Appeals are final and are not subject to further appeal.

J.A. 276-78 (emphasis original).  On February 1, 1993, the parties executed Lease No. DACA84-1-91-14, which became an attachment to the Contract.  After the parties finalized the Contract in early 1993, the Inn was constructed and opened for business by June 1994.

In 1997 and 1998, the JFTR, the travel regulation incentivizing military personnel to patronize the Inn, was amended.  As a result of the amendments, the Department of Defense began reimbursing for any lodging costs up to the amount charged at government quarters, whether or not the traveler actually stayed at government quarters such as the Inn.

On June 7, 1999, Minesen filed a certified claim with the Contracting Officer ("CO") in which it alleged that the JFTR amendments eliminating the mandatory per diem forfeiture breached the Contract and negatively impacted occupancy rates.  Minesen sought (1) $2,541,670.14 in lost revenues through May of 1999, and (2) future performance, or alternatively, immediate termination of the Contract with a payment of $25,506,325.00.

The CO denied the claim.  On February 18, 2000, Minesen submitted further claims to the CO, seeking, *inter alia,* anticipatory profits for breach of contract.  These claims were also denied by the CO.  Minesen timely appealed both claims to the ASBCA, a right guaranteed in the Contract.

On November 20, 2006, after a five-week merits hearing, the ASBCA issued its decision.  *Minesen Co.,* ASBCA Nos. 52488, 52811, 07-1 BCA ¶ 33,456 (the "2006 Decision").  The ASBCA rejected Minesen's argument that the Fund had repudiated the Contract by acquiescing to the changes in the JFTR.  The administrative judge ("AJ") found no outright repudiation of the Contract because the Fund never stated that it refused to perform.  But the AJ

also found that the Contract provision requiring travelers receiving the per diem reimbursement to patronize the Inn

> constituted the core of Minesen's benefit of the bargain. The Inn was located on a secure military installation and was not open to the general public. In order to capture a market for its services, Minesen had to rely on an incentive to encourage official travellers [sic] to stay at the Inn. This device was the mandatory forfeiture provision of Clause 7. In acquiescing to the 1997 and 1998 changes in the JFTR which removed this mandatory forfeiture provision, the Fund affected [sic] a basic alteration in the parties' contractual relationship.

*Id.* at 123-24. The ASBCA concluded that the Fund should have fashioned a remedy to the JFTR amendments, ranging anywhere from a new reimbursement scheme to a complete termination of the Contract for convenience. "It failed to do so," the ASBCA held, "and, thus, breached the contract, entitling Minesen to recover damages." *Id.* at 124.

The ASBCA remanded the case to the CO for a determination of damages. Minesen claimed entitlement to past lost profits; interest; and future lost profits. Minesen's statement of costs calculated "anticipatory profits from January 1, 2008 through the end of Minesen's contract equal [to] $34,024,454." J.A. 314. The Fund identified various documents it claimed were necessary to verify damages, particularly those showing what Minesen would have earned from soldiers who declined to stay at the Inn but who did not forfeit the lodging reimbursement. Minesen did not promptly provide, among other things, its audited financial statements for FY 1994 through FY

1996, preventing the Fund from comparing the Inn's profitability before and after breach.

In early 2008, barely a year into the quantum phase, Minesen filed a new complaint (the "2008 Claim") alleging that, subsequent to the 2006 Decision, the Fund had failed to cure its ongoing breach. Minesen asserted that failure to cure over the intervening fifteen months constituted an independent ground of material breach as of December 31, 2007, given that eighteen years were left on the Contract.

The CO denied the 2008 Claim, stating: "[T]here is no new dispute. This claim duplicates claims which you previously filed . . . and to which the Board, as described above, has already rendered a decision on the merits." *Id.* at 150. The CO noted that the earlier action "is now in the quantum phase in which the parties are working to effect settlement of the dispute." *Id.* Minesen again appealed to the ASBCA.

On July 7, 2008, Minesen moved for partial summary judgment, alleging that the Fund had done nothing to cure its continuing breach despite having been found liable in 2006. The Fund countered with a motion to dismiss, arguing that the 2006 Decision did not require anything more than what it was presently doing— cooperating in the quantum phase on remand. According to the Fund, no new claim was warranted because it "has regularly kept Minesen informed of the status of its efforts to calculate damages, and thus, has provided adequate assurances of a remedy." *Minesen Co.,* ASBCA No. 56346, Slip Op. at 5 (July 16, 2010).

On July 16, 2010, the ASBCA denied Minesen's motion for partial summary judgment and granted the Fund's motion to dismiss. The ASBCA found genuine issues of material fact precluding summary judgment for

Minesen, including evidence that throughout the quantum phase the Fund actively pursued discovery, conducted an audit, and responded to requests. The ASBCA also held that the 2008 Claim was merely duplicative, and not a new cause of action:

> We also agree with the Fund that Minesen's "new" claim in ASBCA No. 56346 is duplicative. The factual premise of this claim is in dispute, as is its legal conclusion that it has identified "a new, independent claim for material breach." As the Fund states in its brief, "the only 'new' facts the Appellant cites are those related to the amount of time the parties are taking to resolve the controversy in ASBCA Nos. 55996 and 55997." ASBCA No. 56346, thus, is not a new cause of action, is duplicative, and must be dismissed.

*Id.* at 7. Pursuant to the ASBCA final determination dismissing the 2008 Claim, Minesen appealed to this court.

## II. DISCUSSION

Minesen argues on appeal that the ASBCA dismissal of the 2008 Claim was improper because it constitutes a new and distinct claim over that decided in the 2006 Decision. The Fund responds that this court should not even reach the merits of whether the new claim is duplicative because at least two threshold defects estop Minesen's appeal before this court.

First, according to the Fund, the decision of the ASBCA was not rendered under the Contract Disputes Act ("CDA"), 41 U.S.C. § 7101 *et seq.*, such that the Federal Circuit lacks statutory jurisdiction over this case. The Fund argues that the CDA does not apply to the Contract because the Fund is a nonappropriated fund

instrumentality ("NAFI"). Second, the Fund argues that Minesen waived any right to appeal to the Federal Circuit pursuant to the disputes clause of the Contract, which states that ASBCA decisions are final. The Fund maintains that this is a valid and enforceable provision that expressly precludes appeal to this court by consent of the parties.

## A. Statutory Jurisdiction

Under 28 U.S.C. § 1295(a)(10), this court has jurisdiction to hear appeals from an ASBCA final decision. The Fund argues that this court lacks jurisdiction to consider this appeal because it is a non-enumerated NAFI, as agreed in the Contract. NAFIs are "federal government entities whose monies do not come from congressional appropriation but rather primarily from [their] own activities, services, and product sales." *El-Sheikh v. United States*, 177 F.3d 1321, 1322 (Fed. Cir. 1999) (internal quotation marks omitted). Under the "NAFI doctrine," entities that have NAFI status are not typically subject to suit on contract claims because any damages awarded against them would be paid using appropriated funds. *See Furash & Co. v. United States*, 252 F.3d 1336, 1338-43 (Fed. Cir. 2001). This court has clearly held that it lacks jurisdiction under the CDA to hear contract claims against NAFIs. *Id.* at 1342-44 (holding the NAFI doctrine applicable to CDA cases).

Minesen counters that our recent holding in *Slattery v. United States*, 635 F.3d 1298 (Fed. Cir. 2011) (en banc), changes this rule. The court in *Slattery* indeed concluded that the Tucker Act provides jurisdiction over claims against NAFIs. *Id.* at 1301 ("Tucker Act jurisdiction does not depend on and is not limited by whether the government entity receives or draws upon appropriated funds."). While *Slattery* did not directly reach the CDA in its

holding, Minesen asserts that the jurisdictional analysis would be identical. Thus, Minesen invites this court to view the recent rescission of the NAFI doctrine as applied to the Tucker Act as necessarily eliminating the NAFI doctrine's applicability to the CDA also.

We decline to decide this issue here. While we are generally obligated to resolve jurisdictional challenges first, Supreme Court precedent only requires federal courts to answer questions concerning their Article III jurisdiction—not necessarily their statutory jurisdiction—before reaching other dispositive issues. *See Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 95-97, 101 (1998); *Restoration Pres. Masonry, Inc. v. Grove Eur. Ltd.*, 325 F.3d 54, 59 (1st Cir. 2003) ("[W]hile Article III jurisdictional disputes are subject to *Steel Co.*, statutory jurisdictional disputes are not."). Here, the jurisdictional issues are strictly statutory, and not constitutional. Even without this exception for statutory jurisdictional disputes, Justice Breyer, concurring in *Steel Co.*, noted with approval that "[t]his Court has previously made clear that courts may 'reserve difficult questions of . . . jurisdiction when the case alternatively could be resolved on the merits in the favor of the same party.'" 523 U.S. at 111 (citing *Norton v. Matthews*, 427 U.S. 524, 532 (1976)); *see also Bowers v. Nat'l Collegiate Athletic Ass'n*, 346 F.3d 402, 415-16 (3d Cir. 2003); *cf. United States v. Caruthers*, 458 F.3d 459, 472 n.6 (6th Cir. 2006).

Because the question of whether claims against NAFIs can be made pursuant to the CDA is complex post-*Slattery*, and because the question has a statutory provenance, we will assume jurisdiction for present purposes and proceed directly to the substance of the appellate waiver argument.

## B. Appellate Waiver

The parties agreed in the Contract's "Dispute Clause" at § II(6)(h) that the ASBCA was the exclusive and final appellate review forum: "The Contracting Officer's final decision may be appealed by submitting a written appeal to the Armed Services Board of Contract Appeals within 90 days of receipt of the Contracting Officer's final decision.  Decisions of the Armed Services Board of Contract Appeals are final and are not subject to further appeal." J.A. 278.  Minesen does not dispute the plain language interpretation of this contract provision, nor does it dispute that it voluntarily and knowingly agreed to the finality of ASBCA decisions.  Minesen instead contends that it could not legally consent to waive its statutory right under 41 U.S.C. § 7107(a) to an appeal before the Federal Circuit.  In sum, Minesen concedes that it contracted to curtail its right to review by this court, but now argues that its obligation is contrary to the CDA and public policy embodied therein.

### i. Waiving Federal Circuit Appeal Is Not Contrary to the CDA

According to Minesen, its right to appear before the Federal Circuit is guaranteed by Congress, despite any contrary contract language to which it may have agreed. Minesen argues—without reference to any specific provision of the CDA—that Congress did not intend that the right to appeal to this forum be waivable.

In order to conclude that Congress intended for the CDA to include protection against waiving appeals from the ASBCA to this court, that intention must be discernable from the text or the legislative history. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985) ("We must assume that if Congress intended the substantive protection afforded by a given

statute to include protection against waiver of the right to a judicial forum, that intention will be deducible from text or legislative history."); *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 705 (1945) ("[T]he question of whether the statutory right may be waived depends upon the intention of Congress as manifested in the particular statute."); *McCall v. U.S. Postal Serv.*, 839 F.2d 664, 667 (Fed. Cir. 1988) (holding that appellant did not show that his voluntary waiver of a statutory right to appeal was contrary to congressional intent). Thus, the burden is on Minesen, as the party opposing enforcement of a contractual waiver, to show that Congress intended to preclude such waivers. *Id.*

We find no such intention here. The plain words and meaning of the relevant provision, 41 U.S.C. § 7107(a)(1), do not proscribe a waiver of appeal rights through contract. The provision reads:

Judicial review of agency board decisions

(a)Review.
   (1) In general. The decision of an agency board is final, except that—

   (A) a contractor may appeal the decision to the United States Court of Appeals for the Federal Circuit within 120 days from the date the contractor receives a copy of the decision; or

   (B) if an agency head determines that an appeal should be taken, the agency head, with the prior approval of the Attorney General, may transmit the decision to the United States Court of Appeals for the Federal Circuit for judicial review under section 1295 of title 28, within 120

> days from the date the agency receives a copy of
> the decision.

*Id.* If Congress did not want this right altered by agreement, it would have said so; but this provision contains no express prohibition on appellate waivers beyond the ASBCA.

Nor does anything in the CDA's legislative history demonstrate that Congress did not intend for parties to be able to agree to the finality of ASBCA decisions. On the contrary, Congress recognized first among the express purposes of the CDA "induc[ing] resolution of more contract disputes by negotiation prior to litigation," S. Rep. No. 95-1118, at 1 (1978), and "encourag[ing] the informal, quick resolution of disputes before they can develop into expensive and time-consuming administrative tangles or litigation," 124 Cong. Rec. 31,645 (1978).

Recognizing these legislative goals, we do not find that Congress wanted to prevent parties from properly contracting to simplify dispute resolution. Agreeing to the finality of ASBCA decisions accomplishes precisely what Congress intended, at least in part, in passing the CDA. *See Pathman Constr. Co. v. United States*, 817 F.2d 1573, 1578 (Fed. Cir. 1987) ("A major purpose of the [Contract] Disputes Act was to induce resolution of contract disputes with the government by negotiation rather than litigation.") (internal quotation marks omitted); *cf.* 41 U.S.C. § 7103(h)(1) (permitting parties to fashion "other mutually agreeable procedures" for resolving claims). Having agreed to simplify disputes by pursuing resolution under the terms of the Contract, Minesen should be held to its bargain as it does not conflict with—indeed it advances—statutory purposes. *See Mitsubishi Motors*, 473 U.S. at 628 ("Having made the bargain, . . . the party should be held to it unless Congress itself has evinced an intention

to preclude a waiver of judicial remedies for the statutory rights at issue.").

### ii. Waiving Federal Circuit Appeal Is Not Contrary to the CDA's Purpose

Minesen argues as a matter of public policy that allowing a party to waive Federal Circuit appeal skews the balance between the government and contractors during contract negotiations. Minesen argues that its promise to waive appeal rights to the Federal Circuit should be held unenforceable because of the government's superior bargaining power.

### a. Extensive Case Law Permits Voluntary Waivers

The Supreme Court and this court have long held that the government, if not otherwise prohibited by statute, can enforce a voluntary contractual waiver with the same force as a private party, notwithstanding superior bargaining power. *Town of Newton v. Rumery*, 480 U.S. 386, 392-94 (1987); *see also Lynch v. United States*, 292 U.S. 571, 579 (1934) ("When the United States enters into contract relations, its rights and duties therein are governed generally by the law applicable to contracts between private individuals."); *Do-Well Mach. Shop, Inc. v. United States*, 870 F.2d 637, 641 (Fed. Cir. 1989) ("Just as the common law limits the government's power to contract in the same way it limits a private person, it also *protects* the government's power to contract in the same way it protects a private person.") (emphasis original).

In *Rumery*, the Supreme Court addressed an argument analogous to Minesen's and held that the mere possibility of intimidation in contracting with the government cannot justify invalidating all such agreements. 480 U.S. at 392-94. The Court explained that parties are

often forced to make difficult choices which effectively forego statutory or constitutional rights. *Id.* at 393. Parties can be held to such obligations if contracted knowingly and voluntarily. *Id.*

In *McCall*, this court held that a postal employee could enter into an agreement with the government waiving his statutorily conferred right to appeal an agency disciplinary action. 839 F.2d at 665. The agreement at issue concluded by stating that, "the removal will be . . . with no rights of appeal to any forum . . . ." *Id.* When the removal action was later appealed despite the express agreement, the AJ dismissed, finding McCall's waiver of appellate rights valid and enforceable. *Id.* at 666. This court affirmed, directly addressing McCall's contention that such waivers are unenforceable as against public policy due to unequal bargaining power. *Id.* at 666-67. The court explained:

> The waiver agreement in this case, like that in *Rumery*, reflects a rational judgment on the part of McCall. . . . Because his choice was knowing and voluntary, the public interest against involuntary waivers of rights does not weigh against the enforcement of this agreement and it is not void as a matter of public policy.

*Id.* at 667. The *McCall* court added that the possibility of coercion in a civil context was less serious than what was acceptable in *Rumery*, where criminal sanctions loomed. *Id.*

This court has further held that contractors can waive even constitutional rights in litigation with the government. *Seaboard Lumber Co. v. United States,* 903 F.2d 1560 (Fed. Cir. 1990). The Fund argues based on *Seaboard* that if contractors can waive a constitutional right to a jury by contracting *into* a particular forum, they can

also waive a statutory right to appeal by contracting *out of* the Federal Circuit.  In *Seaboard*, a private party had accepted a government contract provision providing for dispute resolution in a forum where there was no entitlement to a jury.  When the provision was contested, this court found that, "[t]he Supreme Court has long recognized that a private litigant may waive its right to a jury and to an Article III court in civil cases," either expressly or impliedly.  *Id.* at 1563.  The Federal Circuit rearticulated the voluntary nature of the government-contractor relationship in negotiation: "'Respondents were not compelled or coerced into making the contract [with the government].  It was a voluntary undertaking on their part.  As competent parties they have contracted for the settlement of disputes in an arbitral manner.'"  *Id.* at 1565 (quoting *Wunderlich v. United States*, 342 U.S. 98, 100 (1951)).

In this case, the record and pleadings indicate that Minesen freely agreed to the finality of ASBCA decisions.  While a promise can be unenforceable if the interest in its enforcement is outweighed by public policy, *Rumery*, 480 U.S. at 392, public policy is not *per se* offended when a sophisticated contractor knowingly and voluntarily agrees to an appellate waiver provision denying Federal Circuit review.

### b. *Burnside-Ott* Does Not Apply in this Case

This court in *Burnside-Ott Aviation Training Center v. Dalton*, 107 F.3d 854 (Fed. Cir. 1997), analyzed public policy concerns associated with waiving review of contract disputes in a narrow context.  *Burnside-Ott* held that parties may not waive review of CO decisions to the ASBCA, but it did not address waiving appeals from the ASBCA to the Federal Circuit.

The court in *Burnside-Ott* reminded generally that "parties to a contract may voluntarily waive certain rights, including the right to receive an impartial and independent federal adjudication, otherwise available to the parties under the law." *Id.* at 858. However, the court determined that under the CDA at least one impartial review of CO decisions was necessitated by the statute's goal of "equaliz[ing] the bargaining power of the parties when a dispute exists," a requirement satisfied by review in the ASBCA. *Id.* (citing S. Rep. No. 95-1118, at 1). Whereas the ASBCA is a neutral tribunal and not a representative of the agency,[1] the CO is unquestionably biased, permitting the government to "commandeer the final decision on all disputes of fact arising under the contract" if its decisions remain unreviewable. *Id.* at 858. The court explained:

> In government contract disputes, unlike contract disputes between two private parties, the initial

---

[1] The ASBCA is described by Congress as a "quasi-judicial" body whose

> members serve as administrative judges in an adversary-type proceeding, make findings of fact, and interpret the law. Their decisions set the bulk of legal precedents in Government contract law, and often involve substantial sums of money. In performing this function they do not act as a representative of the agency, since the agency is contesting the contractor's entitlement to relief.

S. Rep. No. 95-118, at 26; *see also Boeing Petro. Servs., Inc. v. Watkins*, 935 F.2d 1260, 1261 (Fed. Cir. 1991) (under the CDA, the review boards are established as independent, quasi-judicial forums, entities "quite distinct from" their contracting agencies). Indeed, "[t]he contractor should feel that he is able to obtain his 'day in court' at the agency boards and at the same time have saved time and money through the agency board process." S. Rep. No. 95-118, at 25.

determination in each dispute is made by one of the parties, *i.e.*, the CO. Congress commanded that the CO's decision on any matter cannot be denied Board review. . . . Permitting parties to contract away Board review entirely would subvert this purpose and return contractors to the position they occupied before the passage of the CDA.

*Id.* at 858-59.

Minesen is not in the same situation described in *Burnside-Ott*, wherein the contractor was stuck with the determination of the CO, deemed "one of the parties" to the case. *Id.* at 858. This court confirmed that Congress "provide[d] a fair and balanced system" under the CDA to review claims related to government contracts, *id.*, including unwaivable contractor access to the ASBCA for a *de novo* review of CO determinations, recourse sufficient to allay policy concerns inherent in the CDA. There is no suggestion in *Burnside-Ott* law that appeal to this court is additionally required to equalize bargaining power. *Id.*; *see also Seaboard*, 903 F.3d at 1565.

An unwaivable right to ASBCA review as distinguished from optional review before the Federal Circuit is supported by the CDA's legislative history. Congress intended under the CDA that contractors benefit from a "flexible system that provides alternative forums for resolution of particular kinds of disputes," either in the federal courts or before agency boards. S. Rep. No. 95-118, at 13. Thus, while Congress ensured immutable access to the United States Court of Federal Claims ("Court of Federal Claims") under § 7104(b) because "[c]ontractors should not be denied a full judicial hearing on a claim they deem important enough to warrant the maximum due process available under our system," for

contractors desiring a simplified process Congress provided another option under the CDA—agency boards, "the least expensive, most expeditious forum available." *Id.* at 12. Congress explained that

> The aim of any remedial system is to give the parties what is due them as determined by a thorough, impartial, speedy, and economical adjudication. . . . The claimant should be able to choose a forum according to the needs of his particular case; that is, one where the degree of due process desired can be balanced by the time and expense considered appropriate for the case.

*Id.* at 13. The CDA thus enlarged the contractor's options for dispute resolution: "Congress mandated that the government had to include in its contracts the broader review provisions set out in the CDA, that is, the dual avenues of review either by appeal to a Board of Contract Appeals or by a direct access suit in the Court of Claims."[2] *Seaboard*, 903 F.3d at 1565.

The dissent contends that exercising the option for flexible, expeditious review provided by the CDA creates an "anomaly." *See* Dissent Op. at 13. Yet neither the CDA nor its legislative history requires that the dual avenues necessarily be coterminous, such that both end by appeals in this court. Agency boards are designed instead for contractors who find that their case does not warrant "the maximum due process available under our

---

[2] The Federal Courts Improvement Act of 1982, Pub L. No. 97-164, § 105(a), 96 Stat. 25 (amending 28 U.S.C. § 171(a)), established the United States Claims Court. The United States Claims Court inherited the jurisdiction of its predecessor, the United States Court of Claims. Congress renamed it the United States Court of Federal Claims by the Federal Courts Administration Act of 1992, Pub. L. No. 102-572, § 902, 106 Stat. at 4516.

system," and instead opt for "a swift, inexpensive method of resolving contract disputes." S. Rep. No. 95-118, at 12. Allowing voluntary waiver of § 7107(a) appeals from the ASBCA implements Congress's intent that the dual avenues serve different ends.

Minesen could have, as the dissent notes, arrived before this court through the Court of Federal Claims pursuant to § 7104(b) (a provision actually containing the "notwithstanding any contract provision" guarantee), but Minesen chose instead to accept ASBCA decisions as final, and filed in that forum when a dispute arose in 2008. Minesen freely chose the path of streamlined adjudication and tailored its dispute resolution mechanisms with the Fund accordingly. We therefore decline Minesen's invitation to extend *Burnside-Ott* to this case.

### iii. The CDA's Standard of Review Provision Is Irrelevant to Contractual Waiver

The dissent raises a novel theory that a standard of review provision found at 41 U.S.C. § 7107(b) reveals Congress's intent that appeals from the ASBCA under § 7107(a) be unwaivable. Dissent Op. at 7. We disagree.

The theory that § 7107(b) renders Federal Circuit appeal unwaivable was never briefed by Minesen. Minesen did not argue that specific language in the CDA speaks to the appellate waiver issue, and the Fund did not have a proper opportunity to present arguments interpreting § 7107(b). It is well-established that federal appellate courts do not consider arguments not timely raised by the parties. *Singleton v. Wulff*, 428 U.S. 106, 120 (1976). This rule permits litigants "the opportunity to offer all the evidence they believe relevant to the issues" and prevents them from being "surprised on appeal by final decision there of issues upon which they have had no opportunity

to introduce evidence." *Id.* (quoting *Hormel v. Helvering*, 312 U.S. 552, 556 (1941)).

In any event, the dissent's attempt to infer Congress's intent by shoehorning § 7107(b)'s "notwithstanding any contract provision" language into § 7107(a) is not convincing. By its terms, § 7107(b) merely defines this court's standard of review in CDA cases. Thus, while parties can waive Federal Circuit appeal available under § 7107(a), if they elect not to waive § 7107(b) merely sets out the review standard that must be followed. We refuse the dissent's suggestion to rewrite the statute by applying language from § 7107(b) that Congress declined to provide directly in § 7107(a). *See supra* § II.B.i. Congress was aware of how to make CDA provisions unwaivable when it wanted. *Do-Well*, 870 F.2d at 641 (finding of the CDA that, "[w]here Congress did not want the Act altered by parties' agreements, it said so"). Congressional silence in this case should be construed as permitting appellate rights beyond the ASBCA to be governed by the parties' agreement. *See id.*

Recognizing the lack of express language in the relevant provision, the dissent relies on the spirit of the repealed Wunderlich Act, Pub. L. No. 83-356, 68 Stat. 81 (1954), to justify a strained interpretation of the CDA. Dissent Op. at 7-11. The Wunderlich Act of 1954 was passed to legislatively overturn the ruling in *United States v. Wunderlich*, 342 U.S. 98 (1951). *See* H.R. Rep. No. 83-1380 (1954). In *Wunderlich*, a government contract clause provided that factual disputes would be decided by the CO, with right of appeal only to the Secretary of the Interior. 342 U.S. at 99. The effect of *Wunderlich* was to keep out of the Court of Claims all cases except those claiming fraud. *Id.* Congress, to prevent the agency representative from "act[ing] as a judge in his own case," *id.* at 103 (Jackson, J., dissenting), "as a matter of

grace, provided for *narrow* judicial review of a contracting officer's decision" in the Wunderlich Act, *Seaboard*, 903 F.2d at 1565 (emphasis added). The legislative fix ensured that contractors would always have a right to review CO determinations before the Court of Claims. *Id.*

In passing the CDA, Congress already renewed the guarantee of direct access from the partial CO to the Court of Federal Claims, "notwithstanding any contract provision . . . to the contrary," 41 U.S.C. § 7104(b). The Wunderlich Act's "narrow" focus on preventing CO decisions from being unreviewable does not inform our understanding of congressional intent regarding appeals from the impartial ASBCA to this court.

### III. CONCLUSION

The disputed contract provision states that, "[d]ecisions of the Armed Services Board of Contract Appeals are final and are not subject to further appeal." J.A. 278. We find that Minesen knowingly and voluntarily waived its right to appeal to this court, and we respect the clear intent of the parties agreeing to the finality of the ASBCA result. We *dismiss*.

**DISMISSED**

COSTS

No costs.

# United States Court of Appeals for the Federal Circuit

---

**THE MINESEN COMPANY,**
*Appellant,*

**v.**

**JOHN MCHUGH, SECRETARY OF THE ARMY,**
*Appellee.*

---

2010-1453

---

Appeal from the Armed Services Board of Contract Appeals in No. 56346, Administrative Judge Michael T. Paul.

---

BRYSON, *Circuit Judge*, dissenting.

I do not agree that the disputes clause of Minesen's contract with the Army Morale Welfare and Recreation Fund ("the Fund") constituted an enforceable waiver of Minesen's right to appeal to this court, requiring the dismissal of this appeal. I would therefore hold that this court has jurisdiction over Minesen's appeal. On the merits, however, I would affirm the Board's dismissal of Minesen's claims as duplicative of claims brought in the company's ongoing action for breach of contract.

I

The majority dismisses Minesen's claim based on a contractual provision that purports to bar any judicial review of a decision of the Armed Services Board of Contract Appeals. I consider that provision to be unenforceable, and I therefore conclude that the Contract Disputes Act ("CDA") authorizes Minesen to take this appeal. In order to reach that issue, however, it is necessary to dispose of several preliminary arguments made by the government, all of which I find to be legally insupportable. The majority does not address those issues because it concludes that the waiver argument by itself disposes of this appeal.

A

The government first argues that Minesen's claim is not covered by the CDA because the Fund is a non-appropriated fund instrumentality ("NAFI"). We held in *Pacrim Pizza Co. v. Pirie*, 304 F.3d 1291 (Fed. Cir. 2002), that contracts with NAFIs other than those specifically identified in the Tucker Act, 28 U.S.C. § 1491, fall outside the scope of the CDA. 304 F.3d at 1293. Since the CDA offers the only route of appeal to this court from decisions of the Board, *see Zinger Constr. Co. v. United States*, 753 F.2d 1053, 1054 (Fed. Cir. 1985), the government argues that *Pacrim Pizza* forecloses our review of Minesen's claim.

The government's argument runs afoul of this court's recent en banc decision in *Slattery v. United States*, 635 F.3d 1298 (Fed. Cir. 2011). We held in *Slattery* that "the source of funding of an agency's activities or for payment of its judgments is not a limitation on Tucker Act jurisdiction." *Id.* at 1320. Thus, contracts with NAFIs presump-

tively fall within the Tucker Act's waiver of sovereign immunity, and "exceptions require an unambiguous statement by Congress." *Id.* at 1320-21.

Although *Slattery* did not address the NAFI doctrine in the context of the CDA, its holding applies equally to claims brought under that Act, because the reach of the CDA is tied to the waiver of sovereign immunity in the Tucker Act. The CDA is applicable to "any express or implied contract (including those of the nonappropriated fund activities described in [the Tucker Act]) made by an executive agency . . . ." 41 U.S.C. § 7102(a). We specifically held in *Slattery* that the enumeration of certain NAFIs in the Tucker Act did not signal any intent on the part of Congress to retain sovereign immunity over contracts with other NAFIs. 635 F.3d at 1313-14. After *Slattery*, the CDA must be deemed to apply to "any express or implied contract . . . made by an executive agency," irrespective of the source of funds used to carry out the contract. The dissenting judges in *Slattery* contended that Congress reaffirmed the existence of the NAFI doctrine when it enacted the CDA, *id.* at 1326-27 (Gajarsa, J., dissenting), but a majority of this court was not persuaded by that argument. Our holdings in *Pacrim Pizza* and prior cases that were predicated on the NAFI doctrine are no longer good law in the wake of *Slattery*. Thus, Minesen may proceed under the CDA even if the Fund is considered a NAFI.

B

The government next argues that no appeal can be taken in this case because the Fund is not an "executive agency," and the CDA applies only to contracts entered into by "executive agencies." *See* 41 U.S.C. § 7102(a). That position is contrary to the text of the CDA, which

provides that nonappropriated fund activities entered into by executive agencies are covered by the Act. As a fall-back position, the government relies on *Pacrim Pizza* to argue that the only NAFIs that qualify as "executive agencies" are those listed in the Tucker Act. As noted, however, *Pacrim Pizza* is no longer good law on that point. Therefore, the Fund must be considered an "executive agency" for purposes of the CDA.

C

The government's next argument is that Minesen's contract is not covered by the CDA because the contract does not concern a "procurement." That argument is based on the government's proposed definition of "procurement," which is tied to the definition of the term "acquisition" found in the statutes governing the Office of Federal Procurement Policy. Those statutes define "acquisition" as a process that uses appropriated funds. 41 U.S.C. § 131. The government argues that because this court has defined "procurement" under the CDA as "all stages of the process of acquiring property or services," *Distributed Solutions, Inc. v. United States*, 539 F.3d 1340, 1345-46 (Fed. Cir. 2008), the CDA does not cover government contracts that concern only nonappropriated funds.

This court made clear in *United States v. General Electric Corp.*, 727 F.2d 1567 (Fed. Cir. 1984), that "[n]othing in the [CDA] limits its application to appropriated funds." 727 F.2d at 1570; *see also Furash & Co. v. United States*, 252 F.3d 1336, 1342 (Fed. Cir. 2001) ("the CDA contains no express provision limiting it to agencies supported by appropriated funds"). Furthermore, the government's "procurement" argument is at odds with the CDA's express coverage of contracts involving nonappro-

priated fund activities. The definition of "acquisition" that the government relies on was added by the National Defense Authorization Act for Fiscal Year 2004, Pub. L. No. 108-136, § 1411, 117 Stat. 1392, 1663-64 (2003). The government has pointed to no evidence that the drafters of that unrelated statute intended for it to have the effect of narrowing the scope of the CDA. *See United States v. Fausto*, 484 U.S. 439, 453 (1988) ("it can be strongly presumed that Congress will specifically address language on the statute books that it wishes to change"). In sum, the term "procurement" does not bar a government contractor from proceeding under the CDA simply because the contracting agency does not use appropriated funds for the contract.

D

The government's principal argument on appeal is that the "disputes clause" of the contract between Minesen and the Fund constituted an enforceable waiver of Minesen's right to appeal to this court. The majority agrees with the government on that issue, but I do not.

The clause at issue was specifically designed for incorporation into NAFI contracts at a time when the NAFI doctrine was in effect. *See* Army Regulation 215-4, ch. 2-14(b) (1987); DA Form 4075-R (1987) (clause I-25). The Board's charter grants it the authority to hear claims arising under the CDA, 48 C.F.R. ch. 2, app. A, but that route of review was of no use to contractors who entered into agreements with NAFIs, because of the NAFI doctrine. Even absent the disputes clause, Minesen's appeal could not have been heard by this court before our decision in *Slattery*, because the Tucker Act had not been interpreted to waive sovereign immunity for causes of action arising from contracts with non-enumerated

NAFIs. Moreover, Minesen could not have proceeded under the CDA because we had tied the scope of that Act to the NAFI doctrine, *see Pacrim Pizza*, 304 F.3d at 1293, and Board rulings that were not made pursuant to the CDA could not be appealed to this court, *Zinger Constr.*, 753 F.2d at 1054. Thus, at the time the contract was signed, the disputes clause set forth Minesen's only right to review of decisions of the contracting officer. And the disputes clause allowed the Board (but not this court) to hear appeals under a provision of its charter that permits it to review claims relating to contracts entered into by any authorized representative of the Army, irrespective of the source of funds used to carry out the contract. 48 C.F.R. ch. 2, app. A; *see, e.g.*, *In re Atlantis Constr. Corp.*, ASBCA No. 44044, 96-1 BCA ¶ 28,045 (assuming jurisdiction over appeal based not on the CDA but on the disputes clause in a contract with a NAFI).

In the aftermath of *Slattery*, the disputes clause is in tension with 41 U.S.C. § 7107(a)(1)(A), the provision of the CDA that permits this court to review decisions of the Boards of Contract Appeals. The majority concludes that the disputes clause controls based on the general principle that a party can freely contract away its right to judicial review. That principle is not applicable, however, when a provision of a government contract conflicts with a federal statute. *Am. Airlines, Inc. v. Austin*, 75 F.3d 1535, 1538 (Fed. Cir. 1996); *see generally The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972) (contract's choice-of-forum clause unenforceable "if enforcement would contravene a strong public policy of the forum in which the suit is brought, whether declared by statute or by judicial decision"); Restatement (Second) of Contracts § 178 (1981). The majority rules that enforcing a contractual waiver of the right of appeal to this court is not contrary to public policy. The court's ruling, however, ignores the

fact that Congress has already made the determination that enforcing such a waiver is contrary to public policy. We are obligated to respect that determination. *See* Restatement (Second) of Contracts § 178 ("A promise or other term of an agreement is unenforceable on grounds of public policy if legislation provides that it is unenforceable . . . .").

The CDA provides the exclusive remedy for all contract disputes that fall within its scope. *Dalton v. Sherwood Van Lines, Inc.*, 50 F.3d 1014, 1017 (Fed. Cir. 1995). It provides a right to judicial review of Board decisions, 41 U.S.C. § 7107(a)(1)(A), and it prescribes particular standards of review that this court must adhere to "[n]otwithstanding any contract provision . . . to the contrary," *id.* § 7107(b). The disputes clause, which prohibits any such review, thus conflicts with the CDA. As a "contract provision to the contrary," the disputes clause must yield to the CDA.

While the provision of the CDA that grants the right of appeal to this court, 41 U.S.C. § 7107(a)(1)(A), does not contain language regarding conflicting contractual provisions, the standard of review provision, *id.* § 7107(b), reveals the intent of Congress to permit review by this court of all government contract disputes brought under the CDA.[1] The language of that provision hews closely to

---

[1]    Because Minesen did not discuss section 7107(b) in its brief, the majority deems it improper to consider section 7107(b) in analyzing whether appeals under section 7107(a) can be waived. The question whether the right to appeal under section 7107(a) can be waived was fully briefed by the parties, and Minesen argued that under applicable case law the CDA bars contractual waivers of that right. Reference to section 7107(b) helps show why that statutory argument is correct and why the case law on which Minesen relies should be applied here.

the language of the Wunderlich Act, Pub. L. No. 83-356, 68 Stat. 81 (1954), which was specifically intended to prohibit the government from inserting jurisdiction-defeating provisions in government contracts. The Wunderlich Act was repealed during the pendency of this appeal as part of the recodification of Title 41. Pub. L. No. 111-350, 124 Stat. 3677, 3859 (Jan. 4, 2011). The Wunderlich Act was intended to be "superseded by section 10 of the Contract Disputes Act of 1978 (41 U.S.C. 609 [recodified at 41 U.S.C. § 7107])," H.R. Rep. No. 111-42, at 9 (2009),[2] so even prior to its repeal, the Wunderlich Act would not have controlled this case. Nevertheless, an understanding of the Wunderlich Act is important to the proper interpretation of the CDA's judicial review provisions.

The Wunderlich Act consisted of two provisions. The first allowed for judicial review of any agency decision alleged to be arbitrary or capricious, unsupported by substantial evidence, fraudulent, or made in bad faith, notwithstanding any contractual provision to the con-

---

When analyzing a party's argument, this court is not confined to the party's table of authorities in determining whether that argument has merit. That is particularly true with respect to jurisdictional questions, as we have an independent duty to inquire into whether we have jurisdiction over a matter, without regard to how (or even whether) the parties have briefed that issue.

[2] According to the legislative history, the Wunderlich Act was, in fact, meant to be repealed by the CDA, but "due to apparent oversight, repeal was not enacted." H.R. Rep. No. 111-42, at 9; *see also* S. Rep. No. 95-1118, at 34 (1978) ("*Section 14(i)* repeals 41 U.S.C. 321–322. The provisions in the repealed Wunderlich Act set a standard of review for agency board appeals which is no longer applicable in [the CDA].").

trary. Pub. L. No. 83-356 (codified before repeal at 41 U.S.C. § 321); *see S&E Contractors, Inc. v. United States*, 406 U.S. 1, 17-18 (1972) (decisions of boards of contract appeals fall within the scope of this provision). The second stated that "[n]o Government contract shall contain a provision making final on a question of law the decision of any administrative official, representative, or board." Pub. L. No. 83-356 (codified before repeal at 41 U.S.C. § 322). The Wunderlich Act did not itself waive sovereign immunity for government contractor claims, but it allowed contractors to bring suit under the Tucker Act.

The Wunderlich Act prevented government contractors from "bargain[ing] away their right to full-scale judicial review of administrative decisions on questions of law," *Lockheed Aircraft Corp. v. United States*, 375 F.2d 786, 790 (Ct. Cl. 1967), or their right to limited judicial review of agency decisions on questions of fact. Congress intended to "retain for the judiciary their proper functions," notwithstanding standard government contract clauses purporting to withdraw judicial review. *Hoel-Steffen Constr. Co. v. United States*, 684 F.2d 843, 851 (Ct. Cl. 1982); *see also S&E Contractors*, 406 U.S. at 14 (describing the purpose of the Wunderlich Act as "to free citizens from a form of administrative tyranny"); *Seaboard Lumber Co. v. United States*, 903 F.2d 1560, 1565 (Fed. Cir. 1990) (stating that the Wunderlich Act "limit[ed] by statute . . . the contractual options previously available to the government"); *Hoel-Steffen Constr.*, 684 F.2d at 851 ("we have in the history of the Wunderlich Act a strong expression of repugnance by Congress to the creation of decisional finality by contract clause"). Such clauses were recognized by Congress as contrary to the "tradition that everyone should have his day in court." H.R. Rep. No. 83-1380, at 4 (1954). Because contractors lacked ordinary negotiating power when entering into

government contracts, provisions that made an agency's decision unappealable were simply voided. *Id.* at 5. The Wunderlich Act, in short, was designed to invalidate jurisdiction-defeating clauses such as the one at issue in this case.

In the Contract Disputes Act, Congress chose language that carefully tracked the Wunderlich Act in order to make clear that the CDA was continuing the prohibition on contractual provisions that purport to foreclose judicial review. Subsection 7107(b) of Title 41, formerly subsection 609(b) of the same title, states:

> Notwithstanding any contract provision, regulation, or rule of law to the contrary, in an appeal by a contractor or the Federal Government from the decision of an agency board . . .
>
> (1)  the decision of the agency board on a question of law is not final or conclusive; but
>
> (2)  the decision of the agency board on a question of fact is final and conclusive and may not be set aside unless the decision is--
> (A) fraudulent, arbitrary, or capricious;
> (B) so grossly erroneous as to necessarily imply bad faith; or
> (C) not supported by substantial evidence.

The CDA was not designed to diminish the statutory right government contractors previously held under the Wunderlich Act to obtain judicial review of decisions of agency boards. To the contrary, the CDA broadened contractors' appeal rights. *See Seaboard Lumber*, 903 F.2d at 1565 ("The CDA, which followed the Wunderlich Act, further restricted the government's options on dis-

pute resolution."); *id.* (describing CDA judicial review provisions as "broader" than those of the Wunderlich Act).

Under the CDA, contractors are given the option either to pursue their claims before an agency board or to bring an action directly in the Court of Federal Claims. 41 U.S.C. § 7104. Appeal rights to this court are available under either circumstance. *See* 41 U.S.C. § 7107(a)(1)(A) (providing for appeal to this court of a Board decision); 28 U.S.C. § 1295(a)(3) (providing for appeal to this court from the Court of Federal Claims). The standard of review in both the agency board and the Court of Federal Claims is de novo. *Wilner v. United States*, 24 F.3d 1397, 1401-02 (Fed. Cir. 1994) (en banc) (agency board review); 41 U.S.C. § 7104(b)(4) (Court of Federal Claims review); *see also id.* § 7103(e) (contracting officer's "specific findings of fact are not binding in any subsequent proceeding"). The standard of review applicable to appeals to this court from agency boards of contract appeals is the same as that set forth in the Wunderlich Act. *Compare* Pub. L. No. 83-356 *with* 41 U.S.C. § 7107(b); *see* S. Rep. No. 95-1118, at 14 (1978) (noting that the CDA adopted the Wunderlich Act's "standards of finality of agency board decisions"); H.R. Rep. No. 95-1556, at 25-26 (1978) (same). And the legislative history of the CDA makes it clear that Congress intended the CDA to continue to permit contractors to appeal to this court from decisions of agency boards of contract appeals notwithstanding any contractual provision to the contrary. *See* S. Rep. No. 95-1118, at 26 ("it would be an anomaly in the American judicial system for [agency boards] to have the final authority on decisions that set important precedents in procurement law"); *see also id.* at 12 (noting that certain disputes "ultimately must go to court"); *id.* at 13 (agency boards are a forum for the "initial resolution of disputes").

We addressed a situation similar to the present case in *Burnside-Ott Aviation Training Center v. Dalton*, 107 F.3d 854, 858-59 (Fed. Cir. 1997). The contractual provision at issue in that case foreclosed review of a contracting officer's calculation of an "award fee" due to the contractor. 107 F.3d at 856. This court held the clause unenforceable in light of two provisions in the CDA. One noted that a contracting officer's factual determinations "shall not be binding in any subsequent proceeding." 41 U.S.C. § 605(a) (1994), recodified as 41 U.S.C. § 7103(e). The other stated that an appeal from a contracting officer's decision "shall proceed de novo in accordance with the rules of the appropriate court." 41 U.S.C. § 609(a)(3) (1994), recodified as 41 U.S.C. § 7104(b)(4). We reasoned that "any attempt to deprive the Board of power to hear a contract dispute that otherwise falls under the CDA conflicts with the normal *de novo* review mandated by the CDA and subverts the purpose of the CDA." *Burnside-Ott*, 107 F.3d at 858; *see also id.* at 859 ("the CDA trumps a contract provision inserted by the parties that purports to divest the Board of jurisdiction, unless the contract provision otherwise depriving jurisdiction is itself a matter of statute primacy"). We also noted that the purpose behind the CDA was to equalize bargaining power between the government and its contractors and to prevent the government from using disputes clauses to "commandeer the final decision on all disputes of fact arising under the contract." *Id.* The majority attempts to distinguish *Burnside-Ott* by stating that "it did not address waiving appeals from the ASBCA to the Federal Circuit." I am not persuaded by that distinction. In *Burnside-Ott*, after determining that the Board did have jurisdiction to hear the appeal, notwithstanding the contractual provision at issue, we addressed the merits of the case, reviewing the issue de novo. *See* 107 F.3d at 860. By doing so, we made clear that the nonwaivable

right of review conferred by the CDA extended not just to the Board, but to this court as well.

Although the contractual provision at issue in this case purports to displace the provisions of the CDA altogether, it cannot have the effect of foreclosing a direct appeal to the Court of Federal Claims, because 41 U.S.C. § 7104(b)(1) provides that such an appeal can be brought "notwithstanding any contract provision . . . to the contrary." *Id.*; *see Seaboard Lumber*, 903 F.2d at 1565 (in the CDA "Congress mandated . . . dual avenues of review either by appeal to a Board of Contract Appeals or by a direct access suit in the Court of Claims"); S. Rep. No. 95-1118, at 11-12 (addressing the importance of contractors being able to directly access a "fully judicialized, totally independent forum . . . ."). The court's decision in this case therefore creates an anomaly. Notwithstanding the disputes clause, Minesen could have appealed the Contracting Officer's decision directly to the Court of Federal Claims rather than the Board. *See* § 7104(b)(1). If Minesen had followed that course, the disputes clause would have been inapplicable, and there would have been no bar to review both in the Court of Federal Claims and ultimately in this court. Yet the majority holds that by choosing to appeal to the Board, Minesen has forfeited its appeal rights in this court, notwithstanding our statutory jurisdiction over appeals from Board decisions under the CDA. That is a type of contractual restriction on judicial review that the CDA, in following the Wunderlich Act, sought to avoid. While the CDA provided for "a flexible system" that allows a claimant "to choose a forum according to . . . the degree of due process desired . . . balanced by the time and expense considered appropriate for the case," it was important to the statutory system that judicial review was available through either route. S. Rep. No. 95-1118. I therefore disagree with the majority's

ruling that the contractual provision preventing appeal to this court is enforceable.

## II

Because I believe that this court has jurisdiction over this appeal, I would reach the merits. On the merits, however, I would affirm the Board's decision that Minesen's complaint is duplicative of the complaint in its pending quantum action.

The Board has discretion to dismiss a complaint that it deems duplicative of a pending related action. *See Finch v. Hughes Aircraft Co.*, 926 F.2d 1574, 1577 (Fed. Cir. 1991); *see generally Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) ("the general principle is to avoid duplicative litigation"). In the first count of its complaint in this action, Minesen asserts that the Fund's "knowing failure to cure the breach" of contract identified in the earlier proceeding constituted an independent material breach of contract. The second count of the complaint alleges that the Fund repudiated the contract by not curing its breach. Minesen requests damages for both counts in accordance with the contract's termination-for-convenience provision. In other words, Minesen treats the contract as effectively terminated and seeks to recover damages for total breach.

That theory of damages was rejected by the Board in the original proceeding. Although the Board determined that the Fund was in breach of the contract, the Board did not characterize that breach as a total breach or an anticipatory repudiation. Instead, the Board remanded for a calculation of damages for the Fund's ongoing partial breach of contract. Thus, Minesen's second complaint

sought to revive a cause of action that had been rejected in a prior proceeding.

The Board determined that Minesen's second complaint did not raise any new cause of action that was not addressed in the previous proceeding, and the Board therefore dismissed the complaint. The Board reasoned that just as Minesen could not recover damages for total breach of contract in the initial proceeding, it could not recover those damages in the subsequent proceeding based only on the passage of time. Instead, it could bring a series of actions for partial breach of contract until the government performed. *See Ind. Mich. Power Co. v. United States*, 422 F.3d 1369, 1377 (Fed. Cir. 2005). The Board noted that the only new facts alleged by Minesen in the second proceeding "relate[] to the amount of time the parties are taking to resolve the controversy in [the prior proceeding]." The Board did not abuse its discretion in determining that delay alone is insufficient to justify the initiation of a separate proceeding on a theory of total contract breach. On the merits, therefore, I would affirm the decision of the Board. Because I would hold that this court has jurisdiction to address the merits of Minesen's appeal, I respectfully dissent from the majority's decision on that issue.