# United States Court of Appeals for the Federal Circuit

_____

**INGHAM REGIONAL MEDICAL CENTER, MCLAREN NORTHERN MICHIGAN, BAY REGIONAL MEDICAL CENTER, LAKEWOOD HEALTH SYSTEM, GIFFORD MEDICAL CENTER, INC.,**
*Plaintiffs-Appellants*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

_____

2016-2081

_____

Appeal from the United States Court of Federal Claims in No. 1:13-cv-00821-MBH, Judge Marian Blank Horn.

_____

Decided: November 3, 2017

_____

DIANE ELIZABETH COOLEY, Pires Cooley, Washington, DC, argued for plaintiffs-appellants. Also represented by ALEXANDER JOHN PIRES, JR.

PHYLLIS JO BAUNACH, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee. Also represented by BENJAMIN C. MIZER, ROBERT E.

KIRSCHMAN, JR., STEVEN J. GILLINGHAM; GERALD ANTHONY WESLEY, Defense Legal Services Agency, United States Department of Defense, Aurora, CO.

———————————

Before PROST, *Chief Judge,* DYK and HUGHES, *Circuit Judges.*

HUGHES, *Circuit Judge.*

Ingham Regional Medical Center, Mclaren Northern Michigan, Bay Regional Medical Center, Lakewood Health System, and Gifford Medical Center, Inc. brought suit against the Government alleging that they were underpaid for certain outpatient medical services. The Court of Federal Claims dismissed Appellants' complaint for failure to state a claim upon which relief can be granted. We find that Ingham may bring a claim for breach of contract but that Appellants may not bring money-mandating claims under 10 U.S.C. § 1079(j)(2) and 32 C.F.R. § 199.7(h)(2) because the Government's interpretation of the statute was reasonable. Accordingly, we reverse-in-part, affirm-in-part, and remand.

I

In 1956, Congress established TRICARE, a military health care system (previously called the Civilian Health and Medical Program of the Uniformed Services (CHAMPUS)). TRICARE provides medical and dental care for current and former members of the military and their dependents. The Secretary of Defense is responsible for contracting with outside health care providers to deliver medical care to TRICARE recipients. *See* 10 U.S.C. § 1073(a)(2); 32 C.F.R. § 199.1. Hospitals that provide TRICARE services are reimbursed in accordance with guidelines set forth by the Department of Defense (DoD). *See* 32 C.F.R. § 199.14.

In 2001, Congress amended the TRICARE statute governing the reimbursements for outside healthcare providers. The statute previously permitted, but did not require, DoD to use Medicare reimbursement rules. The amendment replaced the permissive word "may" with "shall" such that the statute read:

> The amount to be paid to a provider of services for services provided under a plan covered by this section **shall** be determined under joint regulations to be prescribed by the administering Secretaries which provide that the amount of such payments shall be determined to the extent practicable in accordance with the same reimbursement rules as apply to payments to providers of services of the same type under title XVII of the Social Security Act [Medicare].

10 U.S.C. § 1079(j)(2) (2002) (emphasis added).[1] Thus, § 1079(j)(2) required TRICARE to use the same reimbursement rules as Medicare to the extent practicable.

DoD responded to the statutory change by issuing an Interim Final Rule, effective August 12, 2002. TRICARE; Sub-Acute Care Program; Uniform Skilled Nursing Facility Benefit; Home Health Care Benefit; Adopting Medicare Payment Methods for Skilled Nursing Facilities and Home Health Care Providers, 67 Fed. Reg. 40,597-02 (June 13, 2002). The Interim Final Rule noted that Medicare was phasing in a new Outpatient Prospective Payment System (OPPS) methodology for outpatient services and that DoD:

> plan[ned] to follow the Medicare approach. However, because of complexities of the Medicare transition process and the lack of TRICARE cost

---

[1] The statute has since been amended, and this language is currently found at § 1079(i)(2) (2014).

> report data comparable to Medicare's, it is not practicable for the Department to adopt Medicare OPPS for hospital outpatient services at this time.

*Id.* at 40,601; J.A. 4. The Interim Final Rule adopted new methods of payment for four categories of hospital-based outpatient services. DoD issued a Final Rule in 2005, which provided a more detailed explanation of the payment rules for hospital-based outpatient services. *See* TRICARE; Sub-Acute Care Program; Uniform Skilled Nursing Facility Benefit; Home Health Care Benefit; Adopting Medicare Payment Methods for Skilled Nursing Facilities and Home Health Care Providers, 70 Fed. Reg. 61,368-01 (October 24, 2005). For most outpatient services, hospitals would receive payments "based on the TRICARE-allowable cost method in effect for professional providers or the CHAMPUS Maximum Allowable Charge (CMAC)." *Id.* at 61,371. These payment rules applied until 2009, when TRICARE introduced a new payment system for hospital outpatient services that was similar to the Medicare OPPS rules.

Hospitals complained that CMAC was only intended to be used for individual health care providers, not institutions with large overhead costs. TRICARE responded to these complaints by hiring a consultant, Kennel and Associates, Inc., to undertake a study of the accuracy of its payments to the hospitals. The Kennel Study compared CMAC payments to the payments that would have been made using Medicare payment principles, and determined that DoD "(1) *underpaid* hospitals for outpatient radiology but, (2) correctly paid hospitals for all other outpatient services." J.A. 5 (emphasis in original).

Subsequently, DoD created a discretionary payment process and notified the hospitals via letter on April 25, 2011. The letter explained that DoD would permit the hospitals to request a review of their TRICARE reimbursements:

> Based on the request, your hospital may be paid an adjustment, subject to the availability of appropriations, in return for your acceptance of DoD's offer of additional payment based on criteria established by the agency . . . . [P]ayment of the discretionary adjustments will also be contingent on the execution of a release by the hospital of any hospital outpatient service claims against the agency.

J.A. 91–92.

On the TRICARE webpage, DoD published a document titled "NOTICE TO HOPSITALS OF POTENTIAL ADJUSTMENT TO PAST PAYMENTS FOR OUTPATIENT RADIOLOGY SERVICES" (the Notice) and answers to Frequently Asked Questions (the FAQs). The Notice explained, in relevant part, that:

> The TRICARE regulation provisions on hospital outpatient services, in the absence of adoption of the Medicare OPPS methodology, adopted comparable Medicare payments for similar services provided in other sites (i.e., physician offices). That is, TRICARE looked to the similarity of services being provided, not the site of services, in adopting a reimbursement methodology for hospital outpatient services. . . .
>
> [I]n reviewing payments for hospital services, DoD has determined that, for radiology services . . . the technical component of the allowable charge did not approximate the Medicare fair payment for such hospital services as well as it could have. That is, looking at the Medicare reimbursement methodologies in existence prior to adoption of Medicare OPPS in 2000, . . . some radiology services were underpaid in comparison. . . . Thus, although payments to hospitals for radiology services were consistent with the duly

promulgated regulation, there is a basis for TRICARE to provide an opportunity to make some discretionary net payment adjustments to approximate more closely Medicare payment methods. . . .

General TRICARE policy is that payment methodologies follow to the extent practicable Medicare payments. Prior to adopting [OPPS], Medicare used a blended rate that factored in a percentage of hospital costs and a percentage of the global physician fee schedule to reimburse hospital outpatient radiology services. In contrast, TRICARE regulation limited reimbursement to hospitals for individual outpatient radiology services to the technical component portion of the CHAMPUS Maximum Allowable Charge (CMAC), which was one component of Medicare's physician fee schedule. Consistent with TRICARE policy under statute to pay similar to Medicare, we have determined that discretionary adjusted payments may better reflect the Medicare payment amounts for outpatient radiology claims.

J.A. 96–97.

The Notice also described the nine-step process by which hospitals could request review of payments for outpatient radiology services. Steps 1 and 2 instructed hospitals to submit a request for review and described the procedure for submitting the request, including filling an Excel spreadsheet (the Spreadsheet) with identification and contact information. Steps 3 through 7 described the review process, including the methodology TRICARE would follow to extract claims for outpatient radiology services and the formula and calculations TRICARE would use to determine the adjusted payments. The hospitals were informed that TRICARE had the necessary

information in its possession and that they should not submit claims-level data.

Step 8 explained that the hospitals would receive a written response (the Payment Adjustment Worksheet) that would "provide the calculated discretionary adjusted payment and the calculations from which the adjustment was derived." J.A. 100. Step 8 also stated that although "the methodology for calculating the adjusted rate is not subject to questions," the hospitals could submit "questions regarding the data used in the calculations," "accompanied by detailed explanation of the alleged errors and the proposed corrections with supporting documentation." J.A. 100.

Step 9 explained that TRICARE's response would include "a release and agreement to accept the discretionary adjusted payment by the hospital." J.A. 100. The hospitals would receive the payment after signing and returning the release and agreement. The Release reads, in part:

> By accepting the offer of the Department of Defense ("DoD") to provide a net adjustment to prior payments of hospital outpatient radiology services as described in the DoD's letter dated April, 25, 2011, and in consideration of any future net adjustments to prior payments of hospital outpatient radiology services made by the DoD . . . [the Hospital] shall completely release, acquit, and forever discharge the Government, TRICARE beneficiaries, and any MCSCs . . . from any and all claims, demands, actions, suits, causes of action, appeals . . . that Releasor ever had, now has, or hereafter can, shall, or may have against Releasees, whether known or unknown, on account of or arising out of or resulting from or in any way relating to payments, reimbursements, adjustments, recoupments, or any other means of com-

pensation by Releasees made at any time for out-
patient services rendered to TRICARE beneficiar-
ies by Releasor . . . .

J.A. 112.

Each Appellant submitted a request for discretionary
payment. The government agreed "to provide a net
adjustment to prior payments of hospital outpatient
radiology services as described in the DoD's letter dated
April, 25, 2011 . . . ." J.A. 112. In return, Ingham agreed
to release "any and all claims . . . whether known or
unknown" related to payments for TRICARE outpatient
services. *Id.* McLaren, Gifford and Lakewood refused to
sign the Release because they believed the proposed
payment amounts were incorrect. Therefore, they did not
receive any payments. Bay Regional Medical Center
received a response stating that it had been overpaid for
radiology services and was owed nothing.

Certain other hospitals were represented by counsel
during the discretionary payment process and contested
TRICARE's calculations. TRICARE acknowledged that
there were errors in the calculations that it had not been
aware of, and agreed to pay the represented hospitals 77%
more than the originally offered payments for outpatient
radiology. J.A. 12. TRICARE did not recalculate the
payments for any of the hospitals that did not contest
their discretionary payment offer.

Pursuant to a Freedom of Information Act request,
Appellants received redacted versions of the Kennel
Study. Appellants allege that the Kennel Study contains
multiple errors and that if it had been done correctly, the
study would have revealed that all outpatient services
were underpaid, not only radiology. Appellants filed suit
in the Court of Federal Claims alleging that DoD had
miscalculated the payments for outpatient radiology
during the discretionary payment process and that they
had been underpaid for all outpatient services.

The Court of Federal Claims dismissed Appellants' case for failure to state a claim. They appeal three claims: (1) breach of express contract between Ingham and DoD based on the discretionary payment process; (2) revision of Ingham's contract based on mutual mistake, in light of the errors in the calculations of radiology outpatient services and the Kennel study; and (3) violations of money-mandating statutes and regulations, 10 U.S.C. §§ 1079 and 1086 and 32 C.F.R. § 199.7(h)(2).

We have jurisdiction under 28 U.S.C. § 1295(a)(3).

## II

The Court of Federal Claims found that Ingham failed to state a claim for breach of contract after determining that Ingham's claim was barred by the Release. We review de novo "[w]hether the complaint was properly dismissed for failure to state a claim." *Gould, Inc. v. United States*, 935 F.2d 1271, 1273 (Fed. Cir. 1991). We also review contract interpretation and statutory interpretation de novo. *Id.*; *Am. Airlines, Inc. v. United States*, 551 F.3d 1294, 1299 (Fed. Cir. 2008).

The Court of Federal Claims determined that Ingham and the agency entered into a contract that consisted of the April 25, 2011 letter, the Notice, the FAQs, the Spreadsheet, the Payment Adjustment Worksheet, and the Release. J.A. 30–31. Ingham alleges that the agency breached the contract because it failed to follow the agreed upon methodology in calculating the payment adjustment. The Court of Federal Claims found that although Ingham's allegations were sufficient to plead a

breach of contract,[2] the Release was "sufficiently broad to bar all of plaintiffs' breach of contract claims." J.A. 40.

We find that the Release does not bar Ingham's breach of contract claim. Absent special circumstances, "a general release bars claims based upon events occurring prior to the date of the release." *Augustine Med., Inc. v. Progressive Dynamics, Inc.*, 194 F.3d 1367, 1373 (Fed. Cir. 1999). But here, the release the Government relies on is in the very same contract it is accused of breaching. In these circumstances, a release cannot bar claims for breach of contract. In *Link v. Department of Treasury*, 51 F.3d 1577 (Fed. Cir. 1995), we held that the agency could not enforce an appeal waiver in a last-chance settlement agreement because the agency had failed to carry out its responsibilities under the agreement. *Id.* at 1583–84. We concluded that the agency's breach of contract released Mr. Link from his obligation not to appeal his removal. *Id.* To hold otherwise would allow an agency to flout its contractual commitments with impunity. *See McCall v. U.S. Postal Serv.*, 839 F.2d 664, 667 (Fed. Cir. 1988).

Similarly here, the Release cannot be enforced against a claim for breach of the underlying contract. Ingham asserts that DoD failed to follow the methodology for calculating payment adjustments in the contract. Indeed, DoD's promise to follow the agreed upon methodology was part of the consideration for Ingham's agreement to the Release in the first place. DoD cannot then use the Release to bar Ingham's claim that DoD did not adhere to its

---

[2]    DoD concedes that "[t]he court correctly found that appellants had pled sufficient facts to state a claim that the Government had breached the contract . . . ." Appellee Br. at 20. The only issue on appeal relating to Ingham's breach of contract claim is whether the release in question could apply to a breach of the contract including that same release.

obligations under the same contract. Accordingly, the court erred in finding that Ingham could not bring a claim for breach of contract.[3]

## III

Appellants also argue that the Court of Federal Claims improperly dismissed their money-mandating claims for failure to state a claim.

In 2002 and 2005, DoD issued Interim and Final Rules that adopted CMAC payment rules because it was not practicable at that time to adopt Medicare OPPS for hospital outpatient services. Appellants argue that adopting CMAC caused TRICARE to underpay the hospitals, and therefore, DoD violated § 1079(j), which required TRICARE to pay providers "to the extent practicable in accordance with the same reimbursement rules as apply to payments to providers of services of the same type" under Medicare.

The Court of Federal Claims concluded that because "defendant's obligation was to attempt to emulate OPPS, rather than any prior Medicare reimbursement methods," J.A. 59, Appellants "failed to adequately plead any facts showing that the reimbursement rates instituted by the Interim Final and Final Rules represented an unreasonable interpretation of 10 U.S.C. § 1079(j)(2)," J.A. 60.

The parties agree that the statute is ambiguous and that *Chevron* deference applies. *See Biodiversity Legal Found. v. Babbitt*, 146 F.3d 1249, 1253–56 (10th Cir. 1998) (applying the *Chevron* approach to similar statutory language). We must defer to DoD's construction of the

---

[3] Ingham alternatively seeks a claim for contract reformation based on mutual mistake. Because we reverse the dismissal of Ingham's breach of contract claim, we do not reach the issue of mutual mistake.

statute as long as it "reflects a plausible construction of the plain language of the statute and does not otherwise conflict with Congress' expressed intent." *Rust v. Sullivan*, 500 U.S. 173, 184 (1991).

Appellants do not argue that TRICARE was required to implement OPPS. Rather, they contend that TRICARE was required to implement a system that was similar to pre-OPPS Medicare reimbursement rules for hospitals. CMAC did not satisfy this requirement because it was only intended to reimburse individual providers, not hospitals. Therefore, Appellants assert that DoD's implementation of CMAC rates was not a reasonable interpretation of § 1079(j)(2).

We hold that Appellants failed to state a claim in this case. Section 1079(j)(2) is money-mandating in the sense that it directs the agency to determine payment amounts "in accordance with the same reimbursement rules" as Medicare *to the extent practicable*. During the relevant time period, Medicare was transitioning to the OPPS methodology. The use of that methodology was admittedly impractical, and nothing in the statute compelled the DoD to utilize the pre-OPPS Medicare approach. Congress did not prescribe the types of rules that the agency was required to use if the Medicare methodology was impractical, so long as the choice was a reasonable one in light of the statute. Adoption of the CMAC rates was reasonable and not inconsistent with § 1079(j)(2). Because Appellants were paid in accordance with the reasonable approach the agency adopted, they cannot state a money-mandating claim.

Appellants also argue that their reading of the statute is consistent with DoD's own interpretation of its statutory obligations. For support, they point to DoD's statements that CMAC "did not approximate the Medicare fair payment for such hospital services as well as it could have." J.A. 96. Appellants contend that through such

statements and the institution of the discretionary payment process, the agency admitted that its actions did not abide by the statute.

We disagree. DoD's offer of discretionary payment adjustments does not mean it lacked the authority to implement the CMAC rules. The Notice states that TRICARE had chosen to "make some discretionary net payment adjustments to approximate more closely Medicare payment methods." J.A. 97. Nevertheless, both actions—implementing CMAC and offering discretionary payment adjustments—were within DoD's discretion in interpreting § 1079(j)(2).

Because DoD was not required to implement any specific reimbursement rules and the approach adopted was reasonable, we affirm the trial court's dismissal of Appellants' money-mandating claims.

IV

For the reasons set for this in this opinion, we reverse the dismissal of Ingham's breach of contract claim, affirm the dismissal of Appellants' money-mandating claim, and do not reach the claim for mutual mistake. We remand for further proceedings on the breach of contract claim.

**AFFIRMED-IN-PART, REVERSED-IN-PART, AND REMANDED**

No costs.